# United States Court of Appeals
## For the First Circuit

No. 21-1457

UNITED STATES OF AMERICA,

Appellee,

v.

FÉLIX A. SERRANO-BERRÍOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Héctor Sueiro-Álvarez, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo were on brief, for appellant.

Kevin Barber, U.S. Department of Justice, Criminal Division, Appellate Section, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Appellate Chief, Kenneth A. Polite, Jr., Assistant Attorney General, and Lisa H. Miller, Deputy Assistant Attorney General, were on brief, for appellee.

June 27, 2022

**KAYATTA**, **Circuit Judge**.  Félix Serrano-Berríos was sentenced to the statutory maximum of two years' imprisonment for violating two conditions of his supervised release.  In percentage terms, this sentence greatly exceeded the applicable guidelines sentencing range of eight to fourteen months.  It appears from the district court's cryptic explanation for its upward variance that the court may have relied on a misapprehension of the record and/or used unsubstantiated information from outside the record.  We therefore vacate the sentence and remand for expedited resentencing by a district court judge unburdened by any misapprehension concerning the relevant facts.

## I.

In 2014, Serrano was convicted of carjacking and (after a remand) sentenced to ninety-two months' imprisonment, with three years' supervised release to follow.  He was released from prison on November 15, 2019 and commenced his period of supervision.  In December 2020 (with a supplement filed in February 2021), probation moved to revoke Serrano's supervised release because, it alleged, he had violated the following five conditions of that release:

- Mandatory Condition No. 1 -- "You must not commit another federal, state or local crime."

- Mandatory Condition No. 3 -- "You must refrain from any unlawful use of controlled substance[s]. . . ."

- 2 -

- Special Condition No. 7 -- "The defendant shall participate in an approved inpatient or outpatient mental health Treatment program . . . ."

- Standard Condition No. 9 -- "If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours."

- Special Condition No. 10 -- "The defendant shall participate in an approved substance abuse treatment program arrange[d] and approved by the U.S. probation officer until duly discharged . . . ."

When probation moves to revoke supervised release, "a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b)(1)(A). If there is no probable cause, the proceeding must be dismissed. Id. 32.1(b)(1)(C). If probable cause exists, a district court will hold a revocation hearing, at which the government must prove a violation by the preponderance of the evidence. Id.; United States v. Whalen, 82 F.3d 528, 531-32 (1st Cir. 1996).

**A.**

At his probable cause hearing before the magistrate judge, Serrano admitted to violating condition 3: Over a twelve-month period, he tested positive for cocaine twice and (as he reported to his probation officer) relapsed four other times. He also admitted that he violated condition 9: He did not report to his probation officer within 72 hours of an interview that he had

- 3 -

with local police while he was hospitalized with gunshot wounds. Otherwise, Serrano contested the alleged violations.

To establish that he violated condition 1 by committing another crime, probation pointed to a December 2020 arrest in which Serrano was charged in Commonwealth court in connection with an alleged domestic-violence incident. However, the government's witness at Serrano's probable cause hearing testified that those charges were dropped because the alleged victim declined to pursue them. Serrano argued that mere charges, without more, cannot support a finding of probable cause that he committed the underlying crime. The magistrate judge agreed. Thus, the charge that Serrano violated this condition was dismissed.

To establish that Serrano violated conditions 7 and 10, probation pointed to the admitted facts that Serrano over the course of a year missed seven treatment appointments and relapsed six times. Serrano responded that none of those facts established that he failed to participate in the programs as required. The magistrate judge again agreed, concluding that Serrano "did participate in both an inpatient and outpatient" treatment program and that "it was a fluid type of an arrangement together with his Probation Officer and together they came up with a better program that was the intensive outpatient treatment." The magistrate judge therefore found probable cause only with regard to the admitted violation of conditions 3 and 9.

- 4 -

Serrano's supervised-release violations are classified at the lowest level, referred to by the U.S. Sentencing Guidelines as "Grade C," U.S.S.G. § 7B1.1(a), thus his Guidelines sentencing range was well below the two-year statutory maximum. The Guidelines provided a range of 8-14 months. At the revocation hearing before the district court, the government argued that Serrano should receive twelve months' imprisonment (two below the top of the Guidelines range) because of his repeated cocaine use. Serrano asked for four months to be followed by six months of home detention. He conceded that revocation was appropriate in this case.

In its initial colloquy, the government also mentioned "the violation . . . regarding, if you are arrested or questioned by a law enforcement officer, you must notify the probation office within 72 hours," but it did not elaborate. Although there was no allegation that Serrano failed to inform his probation officer of his arrest, when the judge asked to what arrest the government was referring, the government launched into a description of the dropped domestic-violence charges. When the government stated that they were "dismissed because [Serrano's] partner has . . . withdrawn that claim," the court responded, "Well, that's not the way I understand it. I think the claim was dismissed under the Puerto Rico Speedy Trial Act." Immediately, the government changed

its tune and responded, "That is our understanding as well." Nothing in the record supported this supposition. Indeed, the witness testimony at the probable cause hearing revealed otherwise. The district court nevertheless went on to question why the magistrate judge found no probable cause for the fact that Serrano committed a state crime. Serrano's counsel protested that that incident was not before the court and that the violation related to not informing probation about an encounter with the police was actually about Serrano's entirely unrelated interview regarding his gunshot injuries. The government conceded that this was true.

The district court then proceeded with sentencing. In explaining its rationale, the court cited the Guidelines sentencing range (8-14 months) and "the factors set forth in . . . section 3553(a)." In upwardly varying to issue the maximum statutory sentence -- two years, or 10 months over the top of Serrano's range -- the court stated as follows:

> Mr. Serrano has shown that he is unable to comply with the law or the conditions of supervised release imposed on him by the Court by continuously using illegal substances and by not notifying contact with a law enforcement officer within 72 hours.

> Mr. Serrano has been provided with the necessary tools and interventions to become a pro-social and law-abiding citizen. He was referred to outpatient and inpatient treatment for his dual disorder, substance abuse and mental health, at Caribbean Therapeutic and

- 6 -

Educational Group and Guara Bi inpatient treatment. But despite many efforts to assist him, he continues to incur in violations of his conditions of supervised release.

He tested positive to more than two or admitted to the use of controlled substances more than five times within a year's time.

The probation officer has extinguished a release source, including outpatient and inpatient treatment, drug testing, and cognitive behavioral interventions.

To reflect the seriousness of the offense, promote respect for the law, provide just punishment for Mr. Serrano's offense, afford adequate deterrence, and to protect the public from further crimes by Mr. Serrano, the Court concludes that a statutory sentence is a sentence sufficient but not greater than necessary to comply with the purposes set forth in Title 18, United States Code section 3553(a).

Serrano's counsel objected to the sentence as "procedurally and substantively unreasonable." He objected to the court's prior referral to the dropped state-court charges, and he noted that Serrano did engage in treatment (as found by the magistrate judge). In response, the court listed four dates on which Serrano had missed treatment. When Serrano's counsel objected that any claim that he failed to comply with the treatment conditions was unsupported by probable cause (as found by the magistrate judge), the court chastised: "You brought it up. You brought it up. I didn't mention it in my original wording, but you brought it up."

On appeal, Serrano contends that that the district court improperly relied on two alleged violations that the magistrate judge found were not supported by probable cause, that the court did not adequately explain its upward variance, and that the sentence is otherwise substantively unreasonable.

**II.**

When a district court varies upward from the Guidelines range, our precedent requires it to "justify th[at] upward variance." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014) (citing United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013)). To do so here, the district court needed to "articulate[] why it believed [Serrano's] case differed from the norm," id. at 177, or, in other words, "the mine-run of [Grade C revocation] cases," United States v. Rivera-Berríos, 968 F.3d 130, 136 (1st Cir. 2020). And "the greater a deviation from the GSR, the more compelling the sentencing court's justification must be." Del Valle-Rodríguez, 761 F.3d at 177.[1]

---

[1] The government contends that Serrano failed to object to the adequacy of the sentencing rationale, such that we may only review the rationale for plain error. We disagree. Serrano's counsel objected to the court's consideration of both the state-court charges and his treatment-program record. Subsumed within those objections is the clearly implicit charge that the district court's explanation rested on improper considerations. See Rivera-Berríos, 968 F.3d at 134 ("To preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with exquisite precision."). We accordingly

There are two aspects of the sentencing court's rationale that concern us. First, it is unclear what the court meant by "[t]he probation officer has extinguished a release source, including outpatient and inpatient treatment, drug testing, and cognitive behavioral interventions." One straightforward reading is that probation had eliminated treatment as an option for Serrano to use if released. Such a reading, if intended, would be problematic because probation never so stated. Another -- less straightforward but nevertheless plausible -- interpretation is that, due to Serrano's admitted relapses, the district court itself had lost faith in his ability to succeed at staying clean. That second explanation may or may not be enough to justify an upward variance (query whether six relapses over the course of a year by a person addicted to drugs is outside the "mine-run case" of defendants at a revocation hearing for using illegal substances,[2] a specific finding the district court did not

_____

review the district court's justification for varying upward under the familiar abuse-of-discretion standard.

[2] The Administrative Office of the U.S. Courts' Probation and Pretrial Services Office recently found that "cases in which supervision was revoked averaged 10 [technical] violations," i.e., violations of the terms of release that did not involve committing new crimes (like those here), "while cases without revocations averaged six [such] violations." AO, Revocations for Failure to Comply with Supervision Conditions and Sentencing Outcomes (June 14, 2022). And, of those defendants whose supervision was revoked, 60% received incarceration terms of six months or less; only 15% were incarcerated for more than a year. Id.

make).  But we need not decide whether such an explanation would be sufficient.  Rather, we find ourselves unwilling to rely on such a strained reading of the court's comments to justify an upward variance.

We are also concerned by the district court's sua sponte reference to Serrano's arrest record -- repeated in the court's written judgment -- and by the court's view of the state-court proceeding.  There is nothing in the record to suggest that the charges were dropped merely because of a technical speedy-trial violation.  Indeed, the government's own witness testified that the state charges were dropped because the alleged victim refused to testify.  The magistrate judge concluded that there was no probable cause to support a conclusion that Serrano committed a state crime, so that alleged violation was dismissed and was not properly before the district court.  See Fed. R. Crim. P. 32.1(b)(1)(A), (C).[3]

---

[3]  To the extent the district court relied on the mere fact that state-court charges were lodged to vary upward, that was error because a criminal complaint, "by itself, . . . lacks sufficient indicia of reliability to support a finding that the defendant . . . committed the charged conduct." United States v. Castillo-Torres, 8 F.4th 68, 71-72 (1st Cir. 2021); see also United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020) (cautioning "judges and lawyers alike against relying on mere charges to infer unlawful behavior unless there is proof by a preponderance of the evidence of the conduct initiating those arrests and charges" (cleaned up)); United States v. Marrero-Pérez, 914 F.3d 20 (1st Cir. 2019) ("[N]o weight should be given in sentencing to arrests not buttressed by convictions or independent proof of conduct.").

The government points out that although the district court pressed its view concerning the state-court charges in discussing the case with counsel, it did not subsequently mention the charges in explaining its sentencing rationale. Moreover, one can fairly read the court's reference to Serrano not being law-abiding as only referring to his drug use, not his charges of violating the Commonwealth's penal code. So normally we would find no flaw in the sentencing merely because the court, before explaining its sentencing rationale, evidenced interest in those charges and offered an unsupported view of their disposition. See, e.g., United States v. Pedroza-Orengo, 817 F.3d 829, 836–37 (1st Cir. 2016) (finding that the district court did not rely on the defendant's mental condition to vary upward because it was not mentioned in the sentencing rationale, even though it was discussed earlier); United States v. Gallardo-Ortiz, 666 F.3d 808, 816 (1st Cir. 2012) ("While the court ultimately considered a variety of factors when deciding to impose an increased sentence, it never revisited section 5K2.17. . . . Thus, although it mentioned section 5K2.17, the court actually relied upon [other aspects of the crime] to illustrate [its] seriousness.").

Here, though, in its subsequent written explanation for why it found a violation of condition 9, the district court wrote: "The defendant was charged for several violations of the Puerto Rico Penal Code." We do "tend[] to honor" the oral explanation of

a sentence over the written judgment when they materially conflict, United States v. Cali, 87 F.3d 571, 579 (1st Cir. 1996), but the written judgment "is not an empty formality," United States v. Weathers, 631 F.3d 560, 562 (D.C. Cir. 2011). Rather than conflict with the oral pronouncement, here we find that the written judgment renders unreliable our otherwise controlling assumption that the court excluded from its thinking the express comments it made right before formally explaining its sentence. In short, when a court expressly raises reason X, omits (but does not disavow) reason X in explaining its sentencing rationale, and then clearly includes reason X in its written judgment, our willingness to ignore the court's reference to reason X does not apply.

## III.

For the foregoing reasons, we vacate the sentence and remand to a new district court judge for prompt resentencing based on the existing record as supplemented by argument of counsel and (if offered and admissible) any facts that occurred after the prior date of sentencing. Pursuant to Federal Rule of Appellate Procedure 41(b), the mandate shall issue ten calendar days from the date of this opinion.[4]

---

[4] Counsel need not wait the full ten days to notify the clerk of the district court that expedited scheduling of a hearing will be in order.