# United States Court of Appeals
## For the First Circuit

No. 21-1913

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO REYES-CORREA, a/k/a Robertito,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Gelpí, Thompson, and Montecalvo
Circuit Judges.

Samuel P. Carrion, Assistant Federal Public Defender, with whom Eric Alexander Vos, Federal Public Defender, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Division, and Kevin E. Lerman, Research & Writing Attorney, were on brief, for appellant.
David C. Bornstein, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

August 31, 2023

**MONTECALVO, <u>Circuit Judge</u>.** In this appeal, Roberto Reyes-Correa ("Reyes") challenges a statutory maximum thirty-six-month sentence that the district court imposed following a revocation of supervised release. Reyes argues that the district court, in arriving at the sentence, improperly relied on ex parte communications with a probation officer, which Reyes claims constitutes reversible error. Reyes also contends that the district court's upwardly variant sentence was procedurally and substantively unreasonable. Because we agree that the district court's failure to adequately justify the sentence was procedural error, we <u>vacate</u> the sentence and <u>remand</u> to the district court for resentencing.

## I. Background

To begin, we recount the facts leading up to the revocation sentence at issue here. In 2014, Reyes pled guilty to conspiring to possess cocaine with intent to distribute near a protected location.[1] Reyes had been charged with being a "facilitator" and a lookout for a drug trafficking organization, which entailed acting as a messenger and an intermediary "when clients did not want to go into the housing project." At the time of his guilty plea, Reyes was a first-time offender with no prior arrests or convictions. Following Reyes's plea, the court

---

[1] Reyes was convicted pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, and 860.

sentenced him to thirty-seven months' imprisonment followed by a six-year supervised-release term. Shortly thereafter, Reyes filed an assented-to motion to reduce his sentence. The district court granted the motion, and Reyes's sentence was reduced to thirty months, with no change to the supervised release term.

## A. First Supervised Release Term

In July 2016, Reyes was released from prison and entered supervised release. Before his arrest, Reyes had struggled with a substance use disorder, informing the Probation Office ("Probation") that "he ha[d] a history of Percocet use, approximately four pills a day" and "that he used cocaine daily, spending about $100 a day."[2] Upon release, as required by the conditions of his probation, Reyes began attending an outpatient substance abuse treatment program. In December 2017, Reyes's probation officer notified the district court that Reyes had tested positive for marijuana four times over the previous eight months. The probation officer requested that no action be taken because Reyes had been referred to an inpatient residential substance abuse treatment program. In February 2018, however, Reyes tested

---

[2] Percocet is a brand name for Oxycodone, which is a prescription opioid. Commonly Used Drugs Charts, National Institute on Drug Abuse, https://nida.nih.gov/research-topics/commonly-used-drugs-charts#prescription-opioids (last visited Aug. 30, 2023).

positive for buprenorphine.[3]  Shortly after, Reyes left the program, and the court issued a warrant for his arrest.  When Reyes was arrested and brought before the district court, he admitted to violating conditions of his supervised release by consuming drugs and abandoning his treatment without authorization.  The court revoked his term of supervision and sentenced him to nine months in prison followed by five years of supervised release.

## B. Second Supervised Release Term

In March 2019, Reyes completed his reimprisonment term and began his second term of supervised release, now with a different probation officer.  Three months into his term of supervision, Reyes's probation officer claimed Reyes had violated the conditions of release and requested that a warrant issue to arrest Reyes.  The probation officer alleged that Reyes had failed to show up for two scheduled urine testing appointments and three drug treatment program sessions.  He also stated that Reyes had been "prescribed psychotropic medications to stabilize [his] mental health disorders" and though instructed to pick up the medication, Reyes had failed to provide evidence that he had done

---

[3] Buprenorphine is a "medication to treat opioid use disorder." Buprenorphine, Substance Abuse and Mental Health Services Administration, https://www.samhsa.gov/medications-substance-use-disorders/medications-counseling-related-conditions/buprenorphine (last visited Aug. 30, 2023).  Due to "buprenorphine's opioid effects, it can be misused, particularly by people who do not have an opioid dependency." Id.

so. The probation officer cited this failure as another violation of Reyes's supervised release conditions. The district court then issued a warrant for Reyes's arrest.

When Reyes was arrested and brought before the court, he admitted to the alleged violations. The court once again revoked his supervised release and sentenced him to one year in prison followed by four years of supervised release. In addition to the standard conditions, the court added that Reyes must "reside at the [r]esidential [r]eentry [c]enter" for the first six months of his supervised release.

## C. Third Supervised Release Term

In July 2020, Reyes was released for his third term of supervised release -- the term at issue in this appeal. Due to the COVID-19 pandemic, the residential reentry center where Reyes resided had to "lockdown every participant," which meant that Reyes's access to "substance abuse and mental health treatment [was] very limited." In an informative motion to the court, the probation officer explained that Reyes had a "substance abuse history" and that one year prior, Reyes had undergone a psychiatric evaluation that diagnosed him with "Bipolar disorder, Type 1, mixed episodes." As a result of the limited treatment at the residential reentry center, the probation officer stated that Reyes had "been struggling with his substance abuse problem and [e]specially with his mental health condition." So, in November 2020, the court

- 5 -

suspended the residential reentry center condition, allowed Reyes to move into his mother's home, and referred Reyes to outpatient treatment for his "dual disorder."

Over the next seven months, the probation officer filed two informative motions detailing Reyes's progress. Reyes had continued with treatment but also "demonstrated [a] hostile, defiant and disrespectful attitude towards treatment personnel while [being] resistant to treatment regulations." But he would, at points, also apologize and "recognize[] his attitude problem, explosive behavior and mental health condition while admitting his need of treatment." As the COVID-19 pandemic raged on, Reyes's treatment reports were delayed, and Reyes's progress appeared to slow.

In May 2021, Reyes informed his probation officer that he had been pulled over several days prior for speeding and driving without a license. The probation officer told Reyes that he had violated a release condition by failing to notify the probation officer within three days of any contact with a law enforcement officer. Reyes also began missing treatment appointments, and in June 2021, Reyes's mother contacted the probation officer to report that Reyes had been hospitalized for four days for expressing suicidal ideations.

Given the above, the probation officer asked the court to take no action with regard to the earlier alleged violation in

order to give Probation and the treatment center the time to "emotionally stabilize [Reyes] and continue with the implementation of the dual treatment."

Two weeks later, however, on July 6, 2021, the probation officer requested that the court issue an arrest warrant for Reyes. First, the probation officer explained that a confidential source informed Probation that Reyes had been "acting erratically and under the effects of what appear[ed] to be synthetic cannabinoids." The officer also received "videos and a picture depicting [Reyes] under the strong effect of a controlled substance." Second, the treatment center had informed the probation officer that Reyes had not been "ingesting his medication properly and [that] last week he did not pick up his prescribed medication." On July 23, 2021, Reyes was arrested.

**D. The Revocation Proceeding at Issue in This Appeal**

On August 6, 2021, following his arrest, Reyes appeared before a magistrate judge and waived the preliminary hearing. On October 18, 2021, the court held Reyes's revocation hearing. Reyes did not contest any of the allegations in Probation's motion. He instead explained his struggles with bipolar disorder and severe depression. He stated that his "defiant" behavior was not due to his substance use disorder but instead was linked to his mental health conditions and that "the medication [was] what [was] crucial." Taking that into account, Reyes requested a sentence of

- 7 -

twelve months' imprisonment with no supervised release to follow. The government also recommended a twelve-month sentence. The government took no position on the supervised release term and deferred to the court's judgment.

The court revoked Reyes's supervised release term based on Reyes's use of illegal substances, his failure to notify Probation regarding his contact with law enforcement, and his failure to follow the instructions of the outpatient treatment program. The court explained that because the violations were Grade C, the applicable guidelines sentencing range was three to nine months' imprisonment.[4] The court then sentenced Reyes to thirty-six months' imprisonment, the statutory maximum for Reyes's violation. See 18 U.S.C. § 3583(e)(3). Upon doing so, the court recounted the facts of Reyes's case and noted that it had "viewed the video" of Reyes under the effect of synthetic cannabinoids.

Reyes's defense counsel specifically objected to (1) the probation officer's ex parte submission of videos as "a matter of procedure" and (2) the excessive length of the sentence as substantively unreasonable. While objecting to the sentence length, Reyes's counsel also pointed to the fact that Reyes's

---

[4] Supervised release violations are categorized into three grades. U.S.S.G. § 7B1.1(a). Grade C is the least severe and covers conduct that constitutes "(A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." Id. § 7B1.1(a)(3).

- 8 -

violations were "Type C violations" and not "equal to someone that has . . . committed a crime." Reyes's counsel concluded by highlighting Reyes's contributing mental health issues, noting that Reyes was making "progress," and arguing that it was "excess[ive] to have a 36-month [] sentence" for Reyes. The court denied the objections.

Following sentencing, Reyes spoke with the probation officer and learned that the probation officer had recommended a nine-month sentence and not a thirty-six-month sentence. When announcing Reyes's sentence, the court mistakenly stated that it "agree[d] with the probation officer" on the sentence length. After Reyes alerted the court of this error, the court struck the phrase "[t]he [c]ourt agrees with the probation officer" from the hearing transcript.

Reyes then brought this appeal.

## II.  Discussion

Reyes first argues that the district court violated his due process rights in relying on ex parte communications at his revocation hearing. Second, Reyes argues that his thirty-six-month sentence was both procedurally and substantively unreasonable. "We review preserved challenges for abuse of discretion." United States v. Cruz-Ramos, 987 F.3d 27, 44 (1st Cir. 2021).

We take each argument in turn.

- 9 -

## A. The District Court's Ex Parte Communications with the Probation Officer

Reyes contends that, at the revocation hearing, when the district court stated that it had received and viewed videos from the probation officer, it demonstrated that it had engaged in improper ex parte communications with the probation officer. Reyes also points to a post-hearing order where the district court revealed that the probation officer had prepared "wording" for the court ahead of the revocation hearing. As a result, Reyes argues that he had no opportunity to meaningfully respond to the videos or the "wording" because he had no notice that the court would rely on them. In Reyes's view, the ex parte communications violated his due process rights, and so, at minimum, he should have his sentence remanded for reconsideration. Because Reyes objected to the ex parte communications at his revocation hearing, we review this claim for abuse of discretion. See id.

A sentencing court may "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." Pepper v. United States, 562 U.S. 476, 489 (2011) (quoting United States v. Tucker, 404 U.S. 443, 446 (1972)). Nonetheless, this inquiry does have limits and "is bounded by both Federal Rule of Criminal Procedure 32 and the demands of due process." United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017). Federal Rule of Criminal

Procedure 32.1 sets out requirements and dictates that, at a revocation hearing, a defendant is entitled to:

> (A) written notice of the alleged violation; (B) disclosure of the evidence against the person; (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear; (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and (E) an opportunity to make a statement and present any information in mitigation.

Fed. R. Crim. P. 32.1(b)(2). And we have held that Rule 32.1 and "the Due Process Clause of the United States Constitution require that a defendant be apprised of the information to be relied on in sentencing and an opportunity to challenge and rebut such information." United States v. Berzon, 941 F.2d 8, 16 (1st Cir. 1991).

So, as the sentencing court prepares for the revocation and sentencing hearing, "[e]x parte communication between the probation officer and the court is usually permissible where the court is merely seeking advice or analysis, . . . and the probation officer and the court may consult privately about certain issues incident to criminal sentencing." United States v. Marrero-Pérez, 914 F.3d 20, 25 (1st Cir. 2019) (internal citations omitted). But if "the probation officer reveals new facts relevant to the sentencing calculus, those facts cannot be relied upon by the sentencing court unless and until they are disclosed to the parties

- 11 -

and subjected to whatever adversarial testing may be appropriate." Bramley, 847 F.3d at 7. As a result, "[a] district court's use of new information (meaning information not already found in the district court's record) that is significant (meaning 'materially relied on' by the district court in determining a sentence) can be reversible error." United States v. Ramos-Carreras, 59 F.4th 1, 5 (1st Cir. 2023) (quoting United States v. Rivera-Rodríguez, 489 F.3d 48, 54 (1st Cir. 2007)).

### 1. The District Court's Receipt of Videos

Reyes first contends that the district court improperly received videos of him using synthetic cannabinoids. Because defense counsel was not included on any communication sending the videos to the court, Reyes's defense counsel concluded that the videos were likely sent through "ex parte communications between the probation officer and the [c]ourt."

There is no doubt that defense counsel is correct. The videos do not qualify as permissible ex parte communications seeking "advice or analysis," so if the videos were not disclosed to Reyes, the court should not have received them ex parte. See Marrero-Pérez, 914 F.3d at 25. The operative question here then is whether the videos were new information.

They were not. To begin, Reyes did not contest any of the allegations of the arrest warrant motion, which included the allegations that he had been using synthetic cannabinoids and that

- 12 -

he had been captured on video doing so.  Indeed, the videos were one of the reasons that the probation officer requested the arrest warrant.  Furthermore, the government not only mentioned the videos at the preliminary hearing but also stated that they had provided Reyes with the videos.  As a result, Reyes's argument that he was unprepared for the videos to play a role in his ultimate sentencing is unpersuasive.

Reyes accurately points out, however, that the preliminary hearing was before a magistrate judge and a transcript of the preliminary hearing had not been filed at the time of the final revocation hearing.  As such, anything said at the preliminary hearing should not be considered part of the record. United States v. Colón-Maldonado, 953 F.3d 1, 13 n.10 (1st Cir. 2020) (declining to consider testimony from the preliminary hearing where "no transcript of that testimony was filed before (or at) the final revocation hearing, and the district judge gave no indication he'd listened to an audio recording or reviewed some other record of the testimony").  But we can still use the preliminary hearing transcript to confirm that Reyes had notice and access to the videos.  Even if we credit Reyes's point, it is difficult to characterize the videos as "new information" or extra-record evidence, especially given the probation officer's explicit mention of the videos in the arrest warrant motion.  As

a result, the district court's ex parte receipt of the videos was not reversible error or an abuse of discretion.[5]

## 2. The Probation Officer's "Wording"

Reyes next argues that the district court erred by adopting the probation officer's "wording" during Reyes's revocation hearing. To confirm that the probation officer had recommended a nine-month sentence, the court had requested the probation officer's "wording" that the officer provided to the court before the hearing. In Reyes's view, this reveal meant that the probation officer "wr[o]te out the court's wording to pronounce punishment for [the] violations." In other words, Reyes argues that, through this "wording," the probation officer essentially instructed the court how to rule.

As we stated above, a judge may have ex parte communications with a probation officer "where the court is merely seeking advice or analysis." Marrero-Pérez, 914 F.3d at 25; see also Bramley, 847 F.3d at 6 (noting that a court's "communications

---

[5] Reyes also argues that the court materially relied on the videos and that the videos "apparently had a major impact on the court," which was improper. But the necessary inquiry is whether the information at issue was both new and materially relied upon. See Ramos-Carreras, 59 F.4th at 5; see also United States v. Millán-Isaac, 749 F.3d 57, 70 (1st Cir. 2014) (evaluating "the record closely to determine whether the court considered new information at sentencing" before considering "whether [the court] materially relied on that information in crafting [defendant's] sentence"). Because we establish that Reyes had notice of the videos, the information was not new, and we need not address this argument.

- 14 -

with [a] probation officer are fundamentally different from its communications with third parties" because the probation officer "is simply an extension of the court itself"). And as even Reyes appears to concede, the "wording" contained the probation officer's recommendations. There is nothing in the record to indicate that there was anything beyond advice and analysis in the non-binding recommendation provided to the district court.

Assuming without deciding, however, that there was something more than advice and analysis in the "wording," any error was harmless. See United States v. Tavares, 705 F.3d 4, 26 (1st Cir. 2013) (confirming the "validity of harmless-error analysis in procedural error cases" (citing United States v. Booker, 543 U.S. 220 (2005))). An error is harmless if "the error did not affect the district court's selection of the sentence imposed." Williams v. United States, 503 U.S. 193, 203 (1992).

The court confirmed that the probation officer recommended a nine-month sentence in their "wording." The court, presumably having read the recommendation before sentencing, nonetheless sentenced Reyes to thirty-six months' imprisonment. Whatever may have been revealed in the recommendation, it was employed to support a nine-month sentence -- a sentence roundly rejected by the district court. Even when confronted with the chance to take another look at the probation officer's recommendation, the court adhered to its sentence and instead chose

to amend the transcript.  Given the stark difference between the probation officer's recommendation and the court's ultimate sentence, it is unlikely there was anything in the recommendation that influenced the sentence.  Thus, to the extent there was an error, it did not affect the court's sentence.

### B. Procedural Reasonableness of the Sentence

Reyes next challenges the procedural reasonableness of his sentence.  He contends that the district court erred by failing to adequately explain its 400% upwardly variant sentence.  See United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014) (explaining that "[t]he procedural dimension includes errors such as . . . neglecting to explain the rationale for a variant sentence adequately").  As an initial matter, we must resolve the standard of review.

For a defendant "[t]o preserve a claim of procedural sentencing error for appellate review, [their] objection need not be framed with exquisite precision."  United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020).  It must, however, "be sufficiently specific to call the district court's attention to the asserted error."  United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017).

Here, Reyes's objections were sufficiently specific to call the district court's attention to a perceived failure to explain the sentence length.  The government maintains that Reyes's

counsel failed to raise an objection that preserved Reyes's claim on appeal regarding inadequate explanation. We disagree. In addition to objecting to the court's consideration of the videos as "a matter of procedure," counsel also objected to the court's perceived failure to consider the fact that Reyes's violations were Grade C -- and thus not "equal to someone that has . . . committed a crime." And counsel ended the hearing by objecting to the court's failure to consider Reyes's contributing mental health issues and his progress in treatment. We find that "[s]ubsumed within those objections is the clearly implicit charge that the district court's explanation rested on improper considerations." United States v. Serrano-Berríos, 38 F.4th 246, 250 n.1 (1st Cir. 2022). Thus, we will "review the district court's justification for varying upward under the familiar abuse-of-discretion standard." Id. Having determined the standard of review, we now set out what a court must do to adequately explain a sentence.

During sentencing, a court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c); see also Gall v. United States, 552 U.S. 38, 46 (2007). When a court, as here, imposes a sentence above the guidelines sentencing range, "it must justify the upward variance." Del Valle-Rodríguez, 761 F.3d at 176. To successfully justify a variance, the court needs to "articulate[] why it believe[s] that the [defendant's] case differ[s] from the norm." Id. at 177. And

- 17 -

"the greater a deviation from the [guidelines sentencing range], the more compelling the sentencing court's justification must be." Id.

Here, the court failed to justify its sentence. The court handed down a sentence that exceeded the top of the applicable guidelines range by a multiple of four, but it did not state its reasons for doing so. The stated rationale was:

> To reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and to protect the public from additional crimes by . . . Reyes, the [c]ourt concludes that a sentence outside the guideline range is a sentence sufficient but not greater than necessary to comply with the purposes set forth in Title 18 United States Code, Section 3553(a).

In so stating, the judge offered the same boilerplate language that we have ruled inadequate in at least three separate sentencing cases. See Serrano-Berríos, 38 F.4th at 250 (finding revocation sentencing rationale inadequate where the same language was used); United States v. Flores-Nater, 62 F.4th 652, 656-57 (1st Cir. 2023) (vacating and remanding a sentence for failure to explain where this language was employed); United States v. Muñoz-Fontanez, 61 F.4th 212, 214-15 (1st Cir. 2023) (holding that this non-case-specific language was an inadequate explanation for an upward variance). As we have held before, the given justification is generic and "scarcely constitutes a plausible rationale

- 18 -

sufficient to justify a steep upward variance." Flores-Nater, 62 F.4th at 656.[6] In fact, "it simply rehearses -- but does not apply -- certain of the factors that Congress has instructed courts to consider in imposing sentences." Id. (citing 18 U.S.C. § 3553(a)(2)). So, we reiterate that this language is not enough.

Yet it is true that a sentence may also be justified through "fair inference from the sentencing record." United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016). For example, we found an upwardly variant sentence justified through "fair inference" where "an offender . . . committed a gun-related felony less than a year after completing a substantial incarcerative term for unlawful possession of a machine gun." United States v. Márquez-García, 862 F.3d 143, 147 (1st Cir. 2017).

But there is no such fair inference to be drawn here. The court, before handing down Reyes's sentence, remarked that:

> Reyes has shown that he is unable to comply
> with the law or the conditions of supervision
> imposed on him by this [c]ourt by continuing

---

[6] We acknowledge that Flores-Nater analyzes this issue under substantive reasonableness. 64 F.4th at 655. But as we stated in Flores-Nater, "a district court's procedural duty to adequately explain an upwardly variant sentence bears a strong family resemblance to its duty to spell out a plausible sentencing rationale in order to undergird the substantive reasonableness of a sentence." Id. at 655 n.2 (citing United States v. Vargas-Martinez, 15 F.4th 91, 102 n.7 (1st Cir. 2021)). So, "an adequate explanation for an upwardly variant sentence and the plausible rationale element of the test for substantive reasonableness are almost always two sides of the same coin." Id. (internal quotation marks omitted) (quoting United States v. Ortiz-Pérez, 30 F.4th 107, 113 (1st Cir. 2022)).

to use . . . controlled substances illegally, by not notifying [about] contact with a law enforcement officer within 72 hours, and by not abiding by the rules of [outpatient] treatment to which he has been referred.

The court then recited the facts of Reyes's case before it concluded that "[t]he probation office has extinguished every resource, including [outpatient] and inpatient treatment in previous revocations; drug testing, medicated assistance, drug treatment and cognitive behavioral interventions."

None of these statements are sufficient. When a court supplies a "mere listing of the facts . . ., without emphasis on any particular circumstance," it becomes "impossible to tell" why the court landed on a sentence that quadrupled the guidelines sentencing range. Muñoz-Fontanez, 61 F.4th at 214. Here, the court merely recounted Reyes's technical Grade C violations that led to the revocation hearing.[7] So, while the court's statement that Reyes had "shown that he [was] unable to comply with the law or the conditions of supervision" explains why Reyes's supervised release was being revoked, it does not explain the sentencing rationale or justify the upward variance. A summary of the events that preceded the revocation hearing -- without more -- is an impermissible basis for a large upward variance.

_____

[7] A technical violation is a "violation[] of the terms of release that did not involve committing new crimes." Serrano-Berríos, 38 F.4th at 250 n.2.

Still, the court did state that "[t]he probation office ha[d] extinguished every resource," which could serve as an implicit justification for the sentence. One possible interpretation could be that the court believed Reyes was beyond help and that incarceration was the only option. To resolve this issue, we look to our precedent in Serrano-Berríos, a substantially similar case. On revocation, Serrano-Berríos's guidelines sentencing range was eight to fourteen months, but he was given a two-year sentence. Serrano-Berríos, 38 F.4th at 248-49. During sentencing, the court made a nearly identical statement to the one here: "[t]he probation officer has extinguished a release source, including outpatient and inpatient treatment, drug testing, and cognitive behavioral interventions." Id. at 249.

There, we examined the two potential justifications that could be inferred from the court's statement: (1) that "probation had eliminated treatment as an option for [defendant] to use if released" or (2) that "due to [defendant's] admitted relapses, the district court itself had lost faith in his ability to succeed at staying clean." Id. at 250. Because neither of these explanations had solid foundation in the record, we expressed skepticism as to whether either would be sufficient justification. Id. But we ultimately did not decide the issue. Id. Instead, we declined to engage with any implied rationale because we were "unwilling to rely on such a strained reading of the court's comments to justify

an upward variance." Id. The same holds here. So, while the government may contend that the court's comment provides a "fair inference," we have already analyzed this statement and found it lacking. See id.

In any event, the justification, whether inferred or explicit, must demonstrate that this case differs from the norm, or, in other words, "the mine-run of Grade C revocation cases." Id. (cleaned up) (citing Rivera-Berríos, 968 F.3d at 136). As illustrated by the guidelines sentencing range of three to nine months, there is nothing obvious in the record that demonstrates how Reyes's case differs from "the mine-run of Grade C revocation cases." Id. To the extent there is some distinctive quality to Reyes's case, it is unclear why the government and Reyes's agreement on an above-guidelines sentence of twelve months -- rejected by the court with no explanation or elaboration -- was insufficient to address it. See Flores-Nater, 62 F.4th at 657 ("Although the court was not required to explain why it rejected the . . . upwardly variant sentence recommended by the parties, it should have given at least some indication as to why it believed that [its] upward variance was the option of choice." (internal citation omitted)); United States v. Franquiz-Ortiz, 607 F.3d 280, 282 (1st Cir. 2010) (expressing concern where "it is not clear why the court regarded the above-guideline joint recommendation of the parties as insufficient punishment"). Notably, "by imposing the

statutory maximum sentence, the court left no room for harsher sentences for those with higher criminal history categories and more serious violations." Franquiz-Ortiz, 607 F.3d at 282. Based on the record before us, we have no way of discerning why the court levied the harshest possible sentence for Reyes's Grade C violations.

In sum, even if we adopted a strained reading of the court's comments, none of the rationales explain why Reyes's case was so distinct from the mine-run of Grade C revocation cases that he deserved a 400% increase over the guidelines sentencing range. This case is not one where "the offense of conviction is obviously more horrific than the heartland offense falling within the applicable guideline," and "we can perhaps infer . . . what sparked the perceived need for an upward variance." Flores-Nater, 62 F.4th at 657. Rather, this case is about a person who is living with a substance use disorder, which is hardly an unusual circumstance and certainly not one inherently deserving of additional punishment.

We note, though, that we are not definitively stating that an upward variance is unwarranted in this case. Rather, it is that we cannot infer a reason for the upwardly variant sentence from the "nature and circumstances of the offense." United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008). If the court deemed the number of revocations, Reyes's behavior, or some other aspect

of the record uniquely unacceptable, it should have so stated. See Muñoz-Fontanez, 61 F.4th at 215 ("When imposing a significant variance, a sentencing court must make clear which specific facts of the case motivated its decision and why those facts led to its decision."). Given that the strength of the justification must increase proportionally with the length of an upwardly variant sentence, we will not contort ourselves to cobble together a speculative justification for a massive upward variance. Thus, the district court's failure to justify its sentence was an abuse of discretion.[8] See, e.g., Rivera-Berríos, 968 F.3d at 137 (vacating sentence for failure to explain a one-year increase over the top of the guidelines range); Franquiz-Ortiz, 607 F.3d at 282 (vacating sentence for failure to explain a fourteen-month increase over top of guidelines range); Serrano-Berríos, 38 F.4th at 250 (vacating sentence in part due to a failure to explain a ten-month increase over top of guidelines range).

## III. Conclusion

For the foregoing reasons, we vacate Reyes's thirty-six-month sentence and remand for resentencing consistent with this opinion. The court may base its sentence on the existing

---

[8] Because we have resolved this appeal on the procedural reasonableness ground, we do not address Reyes's substantive reasonableness challenge.

record and any facts, to the extent they are offered and admissible, that occurred after the prior date of sentencing.