# United States Court of Appeals
## For the First Circuit

No. 21-1932

UNITED STATES,

Appellee,

v.

ALEX MANUEL LÓPEZ-FELICIE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo, Hamilton,* and Rikelman,
Circuit Judges.

Robert Millán for appellant.

Julian N. Radzinschi, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, and Edwin Giovannie Mercado, Assistant United States
Attorney, were on brief, for appellee.

July 22, 2024

---

* Of the Seventh Circuit, sitting by designation.

**HAMILTON, Circuit Judge.** Defendant-appellant Alex Manuel López-Felicie ("López") pled guilty to bank larceny. He appeals his above-guideline sentence. His guideline range was 12 to 18 months in prison. The court sentenced him to 60 months, explaining that the guideline range did not sufficiently reflect the seriousness of López's crime. López argues that the sentence was procedurally and substantively unreasonable. Finding no procedural or substantive error, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Theft, Chase, and Shoot-out

Because López pled guilty, we draw these facts from the change of plea colloquy, the transcript of the sentencing hearing, and the undisputed portions of the revised Presentence Investigation Report. See United States v. Walker, 89 F.4th 173, 177 n.1 (1st Cir. 2023) (quoting United States v. Vargas-Martinez, 15 F.4th 91, 95 n.1 (1st Cir. 2021). In the early morning hours of January 9, 2021, López and two other men drove a pickup truck to a closed pharmacy. They broke into the pharmacy and attached a chain to an automatic teller machine (ATM) in the store. Hooking the other end of the chain to the pickup truck, the thieves managed to pull the ATM from its moorings. They loaded it into the bed of the truck and drove off into the night. The ATM held approximately $21,580 in cash.

The thieves then suffered a stroke of bad luck. Three police officers in an unmarked car spotted the pickup truck carrying an ATM in the dead of night. Not surprisingly, the officers began to follow it, eventually into a residential neighborhood. At that point, López and the other thieves realized the unmarked vehicle was following them. Gunfire erupted. We do not know who fired first. López denies having fired a gun, but he agrees that at least one of his co-defendants fired at the police officers in a residential area.

López and the other thieves then abandoned the pickup truck and fled on foot into a wooded area. Other police officers arrived and searched the area until they found and arrested López. During the exchange of gunfire, López had been shot in the leg. He required emergency surgery. López did not have a firearm with him when he was arrested, but officers found a blood-covered firearm nearby. DNA testing showed that the blood on the firearm was López's blood.

## B.    Pre-Sentencing Proceedings

López and the other thieves were indicted on one federal charge of bank larceny under 18 U.S.C. § 2113(b). The charge was based on their removal of the ATM with intent to steal the $21,580 it contained. The cash belonged to a U.S. bank whose deposits were insured by the Federal Deposit Insurance Corporation. See 18 U.S.C. § 2113(b) and (f).

López pled guilty to bank larceny pursuant to a plea agreement. The parties agreed to guideline calculations that the probation officer and district judge later accepted. The base offense level for the bank larceny charge was 6 under U.S.S.G. § 2B1.1(a)(2). Three aggravating factors added 10 more levels: 4 levels for a loss amount exceeding $15,000 under § 2B1.1(b)(1)(C); 2 levels for possession of a dangerous weapon under § 2B1.1(b)(16), 2 more levels under the same provision because the resulting offense level was less than 14; and 2 more levels for reckless endangerment during flight under § 3C1.2, for an adjusted offense level of 16. The parties also agreed to a 3-level reduction for López's acceptance of responsibility under § 3E1.1, for a total offense level of 13. The plea agreement left open the question of criminal history, but everyone agrees that López fell within criminal history category I, for a guideline range of 12 to 18 months in prison. The government and López both agreed to recommend a prison term within the applicable guideline range at the total offense level of 13.

López filed a sentencing memorandum that requested a within-guideline sentence. López's memorandum described him as a "hardworking individual" who had made a "terrible mistake," and the memorandum explained the impact of his crime on his ability to care for his family, including his grandparents, wife, and young child. He raised one factual objection to the probation office's

Presentence Investigation Report. López claimed "that he was unaware that police officers were following him and his co-defendants" as they drove away from the pharmacy in the pickup truck, but he otherwise complimented the PSR as "thorough and well drafted."

## C. Sentencing

At the sentencing hearing, López requested a sentence within the guideline range, 12 to 18 months. He said again that he had "committed a terrible, terrible mistake," but that he had an extended network of community support. The government stood by the plea agreement and requested a sentence of 18 months, the high end of the guideline range. In explaining the "totality of the circumstances" surrounding the offense, the government highlighted that the stolen ATM was loaded with more than $20,000 in cash, as well as the defendants' flight and the exchange of gunfire. The government noted that recent DNA tests had confirmed that López's blood was on the recovered firearm.

López then argued that the fact that his blood was on the gun did not prove that he "had a firearm or fired at anyone," given that he was bleeding profusely from a gunshot wound during the flight. López also argued that he and his co-defendants had not known the people following them were police officers because the police vehicle was unmarked. López expressly declined, however, to dispute the facts that at least one of the thieves

fired on the unmarked police car and that López had constructive possession of the firearm that tested positive for his blood.

In López's allocution, he apologized to his family for the financial and emotional hardship his crime had caused his wife, grandparents, and child. He expressed remorse and said he had become a "more mature man" who had been "rehabilitated" since committing the bank larceny.

After López's allocution, the district court agreed with the guideline calculations that produced a range of 12 to 18 months in prison, based on a total offense level of 13 and a criminal history category of I. The court then noted that it had "considered the other sentencing factors set forth in Title 18, United States Code, Section 3553(a), counsel's arguments today, the sentencing memo filed on defendant's behalf, the government's argument, and the letters received by the Court from Mr. López's partner and from a municipal legislator." The court also noted López's age, high school education, employment, and lack of physical and mental health issues. The court acknowledged that López had no reported history of illegal use of controlled substances and that the bank larceny charge was López's first known arrest and conviction.

The court then said: "While the probation officer has correctly calculated the guidelines, the Court finds that the guideline sentencing range substantially understates the

seriousness of this offense." Reading from an application note in the larceny and fraud Guideline, the court said: "There may be cases in which the offense level determined under [this] guideline substantially understates the seriousness of the offense. . . . In such cases, an upward departure may be warranted." App. 35-36 (quoting U.S.S.G. § 2B1.1 cmt. n.21(A)). The district court believed López's larceny was such a case, explaining:

> The defendants exposed law enforcement officers and the members of the general public to serious risk of death or bodily harm. Two firearms were discharged while . . . defendant and his co-defendants were fleeing from the police, in an effort to accomplish their criminal venture and to kill or maim the police officers. There is no other reason to shoot at them. . . .
>
> The guideline sentencing range in the presentence investigation report does not account for the substantial risk of physical harm or death to others caused by the discharge of two firearms on a public street.

The district court acknowledged that two relevant enhancements had already been applied in calculating López's total offense level: a 2-level enhancement for reckless endangerment during flight under § 3C1.2, and a 4-level enhancement because the offense involved possession of a dangerous weapon, specifically, a firearm, under § 2B1.1(b)(16).

The court explained further why it thought the guideline calculation did not sufficiently reflect the seriousness of the crime. "Neither enhancement contemplates the discharge of a

- 7 -

firearm on a public street. Indeed, driving at a speed higher than the speed limit during flight is sufficient to impose the enhancements." Quoting an application note for the reckless endangerment enhancement, the court said that if "the conduct posed a substantial risk of death or bodily [injury] to more than one person, an upward departure may be warranted." App. 37 (quoting § 3C1.2 cmt. n.6).

The court also explained that the 4-level enhancement for the use of a firearm did not "specifically contemplate the risk caused by the reckless, irresponsible and criminal discharge of a firearm, specifically aimed at the police on a public street." On this point, the court quoted the guideline policy statement on upward departures for the use or possession of weapons and dangerous instrumentalities: "The discharge of a firearm might warrant a substantial sentence increase." App. 37 (quoting § 5K2.6). The judge continued: "Because the defendants, including Mr. López, committed a crime involving the discharge of firearms, and a substantial risk of death or serious bodily injury to more than one person, the police officers and others who could have been transiting the street, an upward variance is warranted."

Concluding that "a sentence above the guideline range reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by Mr. López, and addresses the issues of deterrence and punishment," the court

- 8 -

sentenced López to 60 months in prison, followed by three years of supervised release.

After the court announced the sentence, López objected, arguing that "there is no evidence whatsoever that Mr. López had any knowledge that police officers were following them; that he was fleeing from the police officers. There is no evidence that he fired a gun at any[ ]time . . . [a]nd there is no evidence of who actually fired first." The court noted the objection and denied the request to reconsider the sentence.

## II. DISCUSSION

On appeal, López argues that his above-guideline sentence of 60 months was procedurally unreasonable because (a) the court did not sufficiently justify its upward variance from a guideline range that already included enhancements for reckless endangerment and possession of a firearm, and (b) the record did not support a finding that he had possessed or fired a weapon. López also argues (c) that his sentence is both procedurally and substantively unreasonable because the court failed to consider his remorse and his family and economic circumstances. After setting out the standard of review, we address these three arguments in order.

We review preserved challenges to the reasonableness of a sentence under "a multifaceted abuse-of-discretion standard." United States v. Sierra-Jiménez, 93 F.4th 565, 569 (1st Cir. 2024)

- 9 -

(quoting United States v. Mendoza-Maisonet, 962 F.3d 1, 20 (1st Cir. 2020)); see also United States v. Maisonet-González, 785 F.3d 757, 762 (1st Cir. 2015) (abuse-of-discretion standard applies to both substantive and procedural reasonableness challenges). Under this standard, "we review the sentencing court's findings of fact for clear error and questions of law (including the court's interpretation and application of the sentencing guidelines) de novo." United States v. Carrasquillo-Vilches, 33 F.4th 36, 41 (1st Cir. 2022) (quoting United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020)).

López suggested in his opening brief that this standard applied, arguing that he preserved his claims of procedural and substantive error. We disagree. At his sentencing hearing, his only objections were to three of the district court's factual conclusions: (1) that López knew he was fleeing from police officers, (2) that López personally fired a gun, and (3) that López and the other thieves were the first to shoot in the exchange of gunfire with officers. The only overlap between these objections and López's arguments on appeal is the latter half of his second argument on appeal, which challenges what he says was the district court's factual finding that he personally fired a gun.

López's preserved objection on this point does not help him on appeal because the district court never actually made the factual finding he says he is challenging. The district court

- 10 -

"assum[ed]" that López did not personally possess the firearm, let alone fire it. App. 30. Instead, the district court found only that López had "constructive possession" of the firearm. Id. López did not dispute the court's finding of constructive possession. Id. López thus failed to preserve any challenge to the district court's factual finding that he constructively possessed a firearm in connection with the offense.

Because López's arguments challenging the procedural and substantive reasonableness of his sentence were not preserved in the district court, we review them on appeal only for plain error. See United States v. Melendez-Hiraldo, 82 F.4th 48, 53 (1st Cir. 2023). And despite arguments to the contrary in his briefs, López correctly conceded in oral argument that plain-error review applies, at least to his challenge of the district court's explanation for varying upward. "To succeed under plain error review, an appellant must show (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (alteration in original) (internal quotation marks omitted) (quoting United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016)); see generally United States v. Olano, 507 U.S. 725, 732-35 (1993) (discussing plain-error standard). In this case, because López "fail[ed] to even mention plain error" in

- 11 -

his briefs, "let alone argue for its application here," he "definitively waives these arguments." United States v. Morales-Veléz, 100 F.4th 334, 345 (1st Cir. 2024) (quoting United States v. Benjamin-Hernandez, 49 F.4th 580, 585 (1st Cir. 2022)).

Even if we chose to overlook López's waiver and apply plain-error review, his arguments would fail. We see no error in the district court's sentencing decision, let alone any plain error. A sentencing court is required by statute to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). The court's explanation for a sentence must demonstrate that it "conduct[ed] an 'individualized assessment' of the § 3553(a) factors . . . based on the facts presented in a particular sentencing case." United States v. Colón-Cordero, 91 F.4th 41, 51 (1st Cir. 2024) (quoting Gall v. United States, 552 U.S. 38, 50 (2007)). "When a court imposes a sentence above the guidelines sentencing range, 'it must justify the upward variance.'" Id. (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014)); see Rita v. United States, 551 U.S. 338, 357 (2007) ("Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so.").

To justify an upward variance, a court must explain why it deems the defendant's case different from the norm and/or why it disagrees with the applicable advice from the Guidelines. See

Kimbrough v. United States, 552 U.S. 85, 110-11 (2007); United States v. Reyes-Correa, 81 F.4th 1, 10 (1st Cir. 2023). The more a court deviates from the guideline range, "the more compelling the sentencing court's justification must be." Id. (quoting Del Valle-Rodríguez, 761 F.3d at 177). Still, "brevity is not to be confused with inattention." United States v. Dávila-González, 595 F.3d 42, 48 (1st Cir. 2010) (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 42 (1st Cir. 2006)).

First, López argues that the district court failed to justify the upward variance where two of the enhancements included in López's guideline calculation already accounted for reckless endangerment during flight and use of a firearm. It is true that, "[a]s a general matter, a sentencing court may not double-count factors in justifying an upwardly variant sentence." United States v. Valle-Colón, 21 F.4th 44, 49 (1st Cir. 2021). "We repeatedly have held, however, 'that a sentencing court may rely on a factor that is already included in the calculation of the [guideline sentencing range] to impose an upward . . . variance as long as the court articulate[s] specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation.'" Id. (second and third alterations in original) (quoting United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020)).

That is precisely what Judge Besosa did here. The judge explained in detail why the enhancements for reckless endangerment during flight and use of a firearm failed to account for the seriousness of López's offense. Citing the Guidelines, he explained correctly: "Neither enhancement contemplates the discharge of a firearm on a public street. Indeed, driving at a speed higher than the speed limit during flight is sufficient to impose the enhancements." The reckless endangerment enhancement can apply if just one officer's life is endangered. The two-level adjustment does not account for risk to many people in a public setting. See U.S.S.G. § 3C1.2 cmt. n.6 (explaining if "the conduct posed a substantial risk of death or bodily injury to more than one person, an upward departure may be warranted"). Because the shootout on a residential street risked the lives of many people, an upward departure over and above the enhancement was clearly permissible, even encouraged, under the (advisory) Guidelines.

Further, the court explained, the enhancement for possession of a firearm does not "specifically contemplate the risk caused by the reckless, irresponsible and criminal discharge of a firearm, specifically aimed at the police on a public street." The court was correct. Mere possession of a dangerous weapon is sufficient to impose this enhancement, and the judge quoted the relevant guideline policy statement encouraging upward departures in cases like this one: "The discharge of a firearm might warrant

- 14 -

a substantial sentence increase." App. 37 (quoting U.S.S.G. § 5K2.6). The court thus did not unreasonably base its sentencing decision on a factor that was already accounted for in the Guidelines. The court also explained sufficiently "the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." See Valle-Colón, 21 F.4th at 49 (quoting Bruno-Campos, 978 F.3d at 806). There was no error, let alone a plain error, in the district court's thorough explanation of its choice to vary upward. The fact that the Guidelines in question expressly encourage upward departures in cases like this one reinforces that conclusion.

Second, López argues that the district court's sentence was procedurally unreasonable because it was based on several supposed factual findings he contends are not supported by the record: namely, that López had possessed or fired a weapon. He also challenges the district court's comment that his intention was "to kill or maim the police officers." Even if López had adequately preserved his challenge to these findings, this court's review of the district court's factual findings would be only for clear error. See Carrasquillo-Vilches, 33 F.4th at 41. There was no error in the district court's factual findings supporting the enhancements for reckless endangerment and use of a firearm.

What the district court actually found was that López had constructive possession of the firearm recovered from the

- 15 -

woods, that López and/or his co-defendants shot at police officers during their flight, and that their intent was "to accomplish their criminal venture and to kill or maim the police officers." All three factual findings are supported by the record before the district court at sentencing.

The district court did not find that López or his co-defendants knew they were shooting at police officers, nor did it need to. López did not dispute constructive possession, and in any event, the court could reasonably infer constructive possession from the fact that the recovered firearm was covered in López's blood. López disputed that he and his fellow thieves were the first to fire in the shootout, but he never disputed the more salient point, that they fired at all. Finally, we see nothing unreasonable about the district court's inference from the other facts that the thieves had "no other reason to shoot at" the officers absent an intent to "accomplish their criminal venture and to kill or maim" the individuals at whom they shot. López has not shown clear error in any of the challenged factual findings.

Third and finally, López argues that the district court erred both procedurally and substantively by failing to consider his individual characteristics, including his expressions of remorse and his family and economic situation. The record refutes his assertions. The district court said it had considered the relevant factors under 18 U.S.C. § 3553(a), a statement that "is

entitled to significant weight." United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014). The first factor includes "the history and characteristics of the defendant," § 3553(a)(1), and the court noted on the record López's age and the fact that he has one child, along with his educational and work histories. The court also noted that the ATM heist was López's first known arrest and conviction. The court also said it had considered López's sentencing memorandum and the letters sent on his behalf. The court did not give those factors the weight that López believes it should have, but that is neither unusual nor a sign that the sentence was unreasonable. There was no error, procedural or substantive, in the district court's consideration of López's individual characteristics.

### III. CONCLUSION

López failed to preserve the arguments he raises on appeal through objections in the district court and did not even address the need for plain-error review. His procedural and substantive claims were thus waived for purposes of this appeal. Even if he had preserved his arguments, they would fail. The district court sufficiently explained its decision to impose an above-guideline sentence of 60 months, made reasonable findings of fact related to López's constructive possession of and responsibility for the dangerous use of a firearm, and adequately

considered López's individual characteristics.  For all these reasons, we **<u>AFFIRM</u>** the district court's judgment.