# United States Court of Appeals
## For the First Circuit

Nos.  21-1856
      21-1979

UNITED STATES OF AMERICA,

Appellee,

v.

JADNEL FLORES-NATER, a/k/a Potro,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Kayatta, Selya, and Montecalvo,
Circuit Judges.

Naomi T. Fetterman and Law Office of Naomi T. Fetterman, LLC on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Maarja T. Luhtaru, Assistant United States Attorney, on brief for appellee.

March 20, 2023

**SELYA**, **Circuit Judge**.   A sentence imposed in a federal criminal case must be substantively reasonable.  See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Raymond, 697 F.3d 32, 41 (1st Cir. 2012).   To satisfy this element, a sentencing court must articulate a plausible sentencing rationale and impose a sentence that itself represents a defensible outcome.   In these appeals, defendant-appellant Jadnel Flores-Nater challenges his thirty-year term of immurement as substantively unreasonable. Concluding, as we do, that the sentencing court has thus far failed to articulate a plausible rationale for the defendant's upwardly variant thirty-year sentence, we vacate and remand.

**I**

We briefly rehearse the relevant facts and travel of the case.   Because these sentencing appeals "follow[] a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing."  United States v. Melendez-Rosado, 57 F.4th 32, 36 (1st Cir. 2023) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

On June 8, 2018, the defendant and four other members of a gang to which he belonged kidnapped WGE from a public housing complex.   Each of the gang members — including the defendant — carried an assault rifle during the kidnapping.   After forcibly placing the victim in a vehicle, the kidnappers drove to an area

in Barrazas, Carolina, Puerto Rico. At some point in the process, the gang members told the defendant "Llegó tu día" (translated: "Your day has come") and handed him a revolver. Upon their arrival in Barrazas, the defendant got out of the car and proceeded to shoot WGE in the head. Several other gang members also shot him. WGE died.

Over two years later — on August 3, 2020 — the authorities apprehended the defendant. A federal grand jury sitting in the District of Puerto Rico subsequently indicted him. The operative charging document (the second superseding indictment) charged the defendant with one count of kidnapping resulting in death, see 18 U.S.C. §§ 2, 1201(a)(1); one count of using, carrying, brandishing, or discharging a firearm in furtherance of a crime of violence, see id. §§ 2, 924(c)(1)(A)(iii); and one count of using, carrying, or discharging a firearm in furtherance of a crime of violence causing murder, see id. §§ 2, 924(j)(1).

Although the defendant initially maintained his innocence, he later entered into a plea agreement (the Agreement) with the government. Under the terms of the Agreement, the defendant agreed to plead guilty to the charge of discharging a firearm in furtherance of a crime of violence. See id. § 924(c)(1)(A)(iii). In exchange, the government agreed to dismiss the two other counts against him, as well as all charges

- 3 -

lodged in a separate but related case.  The parties further agreed that they would jointly recommend that the defendant be sentenced to a twenty-five-year term of immurement.

The district court accepted the defendant's change of plea and ordered the preparation of a PSI Report.  When received, the PSI Report noted that the guideline sentence for the offense of conviction was 120 months (the mandatory minimum).  See id.; see also USSG §2K2.4, cmt. n.2.  Neither party objected to the PSI Report.  And although the mandatory minimum sentence was the guideline sentence for the offense of conviction, see United States v. Rivera-González, 776 F.3d 45, 49 (1st Cir. 2015), the defendant filed a sentencing memorandum in which he stated that, based on the "unique case and surrounding circumstances," a twenty-five-year sentence was "fair and just punishment for his offenses" despite the fact that such a sentence was "way above the statutory minimum" of ten years (and, thus, "way above" the guideline sentence).  (Emphasis in original).

The district court convened the disposition hearing on October 7, 2021.  Pursuant to the Agreement, both parties recommended a twenty-five-year incarcerative sentence.  Following the parties' statements, the district court accepted the guideline calculation limned in the PSI Report.  It then stated that it had considered the sentencing factors listed in 18 U.S.C. § 3553(a) and the defendant's sentencing memorandum.  The court briefly

discussed the defendant's current age, educational background, prior drug use, employment status at the time of the offense, and previous criminal convictions before recounting the uncontested facts relating to the defendant's participation in the kidnapping and murder. And after noting the parties' joint sentencing recommendation, the court, without elaboration, stated that "the sentence recommended by the parties does not reflect the seriousness of the offense, does not promote respect for the law, does not protect the public from further crimes by Mr. Flores, and does not address the issues of deterrence and punishment." Furnishing no further explanation, the court imposed a thirty-year incarcerative sentence, which reflected a twenty-year upward variance.

These appeals followed.[1]

## II

In this venue, the defendant argues that his sentence is substantively unreasonable. In advancing this argument, he complains that a thirty-year sentence is "greater than necessary to punish [him]" for the offense of conviction. This general claim of error is deemed to be preserved. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020). Accordingly, our review

---

[1] Although there are two notices of appeal, the second is superfluous and may be untimely. But because the first notice of appeal is both timely and sufficient, we do not probe the point more deeply.

is for abuse of discretion.  See United States v. Jurado-Nazario, 979 F.3d 60, 64 (1st Cir. 2020).

We begin with first principles.  "Appellate review of claims of sentencing error [typically] entails a two-step pavane." United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017). Within this bifurcated framework, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable."  United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).  Here, however, the defendant does not assign procedural error, and we therefore confine our review to the issue of substantive reasonableness. See United States v. de Jesús, 831 F.3d 39, 42 (1st Cir. 2016).

Reasonableness in the sentencing milieu "is a protean concept."  United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).  Consequently, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes."  Clogston, 662 F.3d at 592.  Our task, then, is "to determine whether the sentence falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020). To make that determination, "we look for the hallmarks of a substantively reasonable sentence:  'a plausible sentencing rationale and a defensible result.'"  United States v. Díaz-Lugo, 963 F.3d 145, 157 (1st Cir. 2020) (quoting Martin, 520 F.3d at 96).

- 6 -

Where, as here, the district court imposes an upwardly variant sentence, it must explain its reasons for doing so.[2]  See United States v. Ortiz-Pérez, 30 F.4th 107, 114 (1st Cir. 2022); United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016); see also Gall, 552 U.S. at 50-51.  The court's burden of explanation "increases in proportion to the extent of [its] deviation from the guideline range." Montero-Montero, 817 F.3d at 37.  As the variance increases, so too does the district court's burden to offer a sound justification for the sentence imposed. See id.  By the same token, "the greater the variance, 'the more compelling the sentencing court's justification [for the higher sentence] must be.'"  United States v. Guzman-Fernandez, 824 F.3d 173, 178 (1st Cir. 2016) (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 176-77 (1st Cir. 2014)).

In this instance, the district court imposed a sentence that was twenty years longer than that recommended by the guidelines.  Yet the court offered no case-specific rationale to

_____

[2] We have noted before that a district court's procedural duty to adequately explain an upwardly variant sentence bears a strong family resemblance to its duty to spell out a plausible sentencing rationale in order to undergird the substantive reasonableness of a sentence.  See United States v. Vargas-Martinez, 15 F.4th 91, 102 n.7 (1st Cir. 2021).  This strong family resemblance reflects the fact that "an adequate explanation for an upwardly variant sentence and the 'plausible rationale' element of the test for substantive reasonableness 'are almost always two sides of the same coin.'"  United States v. Ortiz-Pérez, 30 F.4th 107, 113 (1st Cir. 2022) (quoting United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021)).

justify a variance of so great a magnitude. The only attempt at explanation made by the court was its statement that, in its view, the somewhat shorter sentence recommended by the parties did "not reflect the seriousness of the offense, . . . promote respect for the law, . . . protect the public from further crimes by [the defendant], [or] . . . address the issues of deterrence and punishment."

That statement, in itself, scarcely constitutes a plausible rationale sufficient to justify a steep upward variance. It is negative, not positive. More importantly, it is generic, not case-specific. At bottom, it simply rehearses — but does not apply — certain of the factors that Congress has instructed courts to consider in imposing sentences. See 18 U.S.C. § 3553(a)(2).

In faulting the adequacy of the type of boilerplate explanation that confronts us here, we do not write on a pristine page. The same judge used virtually the same words to undergird a steep upward variance in United States v. Muñoz-Fontanez, 61 F.4th 212, ___ (1st Cir. 2023) [slip op. at 3-4]. Faced with an otherwise barren sentencing record and a claim of an inadequately explained sentence, we found plain error, holding that such a rote incantation of sentencing factors did not provide an adequate explanation for the sentence imposed. See id. at ___ [slip op. at 3-5]. Nor did such a rote incantation satisfy the requirement that an upward variance be "[]moored [to] individual

characteristics of either the offender or the offense of conviction." United States v. Rivera-Berríos, 968 F.3d 130, 137 (1st Cir. 2020).

To be sure, a sentencing court's rationale need not always be explicit even when the court imposes an upwardly variant sentence. There are some instances in which a court's rationale may be teased from the sentencing record. Montero-Montero, 817 F.3d at 38; see United States v. Rivera-Gonzalez, 809 F.3d 706, 712 (1st Cir. 2016). After all, we have not mandated that a sentencing court follow any particular format in explaining an upwardly variant sentence. It is enough if the explanation can be gleaned "by fair inference" from the sentencing record. Ortiz-Pérez, 30 F.4th at 114 (quoting Montero-Montero, 817 F.3d at 38).

An example helps to illustrate the point. In Ortiz-Pérez, we found the court's sentencing rationale plausible because we could "fairly infer from the record the factor that drove the court's decision to impose the upwardly variant sentence." Id. There, the court had "expressed concern" that "on two occasions the defendant had 'pointed firearms at the victims to take their vehicles by force, violence, and intimidation.'" Id. at 111, 114. That statement — coupled with other facts illuminated by the sentencing record — grounded the necessary inference.

The case at hand is at a considerable remove from Ortiz-Pérez. The court's generic explanation stands as a solitary

sentry, guarding an otherwise empty sentencing record (which contains no meaningful insight into the court's reasoning). There are simply no spoor for the cognoscenti.

In this case — as with most cases — the rationale underlying the upward variance should "be rooted either in the nature and circumstances of the offense or the characteristics of the offender." Martin, 520 F.3d at 91. This is often a matter of degree, and the upward variance must rest on more than factors already accounted for in the guideline calculus. See Rivera-Berríos, 968 F.3d at 136. Given that the offense of conviction is obviously more horrific than the heartland offense falling within the applicable guideline, we can perhaps infer, notwithstanding the opacity of the sentence record, what sparked the perceived need for an upward variance. But from this opaque sentencing record, we cannot say what specific factors shaped the full extent of the court's upwardly variant sentence. In such circumstances, meaningful appellate review is frustrated. See United States v. García-Pérez, 9 F.4th 48, 53 (1st Cir. 2021).

Nor is it enough that — before pronouncing sentence — the court recounted the facts of the victim's kidnapping and murder. See Muñoz-Fontanez, 61 F.4th at ___ [slip op. at 4]. Those are reprehensible crimes. "But the court's mere listing of the facts . . . , without emphasis on any particular circumstance, makes it impossible to tell" what led the district court to impose

- 10 -

a sentence that tripled the guideline sentence.  Id.  "When imposing a significant variance, a sentencing court must make clear which specific facts of the case motivated its decision and why those facts led to its decision."  Id. at ___ [slip op. at 5] (emphases in original).  The court below failed to satisfy this standard and, thus, failed to articulate a plausible sentencing rationale.

Of course, this case is unusual because the parties had agreed to recommend an upwardly variant sentence:  twenty-five years.  Such a sentence would have included an upward variance of fifteen years.  The defendant's agreement to such a sentence could be construed as an admission on his part that an upward variance of that length was appropriate.  Cf. United States v. Bermúdez-Meléndez, 827 F.3d 160, 165-67 (1st Cir. 2016) (explaining that one factor favoring affirmance of upwardly variant sentence was that defendant himself had recommended sentence exceeding guideline range).  Had the district court simply accepted the parties' joint recommendation, this would have been a different case.

Here, however, the court went further:  it imposed a sentence that was even harsher than a fifteen-year upward variance. Although the court was not required to explain why it rejected the fifteen-year upwardly variant sentence recommended by the parties, see, e.g., United States v. Vega-Salgado, 769 F.3d 100, 104 (1st

- 11 -

Cir. 2014), it should have given at least some indication as to why it believed that a twenty-year upward variance was the option of choice.

## III

We need go no further. For the reasons elucidated above, we conclude that the district court has not articulated a plausible sentencing rationale. Consequently, we sustain the defendant's claim of error, vacate his sentence, and remand for resentencing. We take no view as to the appropriate length of the sentence to be imposed in the proceedings to follow.

**<u>Vacated and Remanded</u>**.