# United States Court of Appeals
## For the First Circuit

No. 22-1231

UNITED STATES OF AMERICA,

Appellee,

v.

RICARDO PEREZ-DELGADO, a/k/a Bam Bam,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Montecalvo, Circuit Judges.

Ralph A. Jacobs for appellant.
Brendan B. Gants, with whom W. Stephen Muldrow, United States
Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, and Julia M. Meconiates,
Assistant United States Attorney, were on brief, for appellee.

April 18, 2024

**THOMPSON, <u>Circuit Judge</u>.** Here are the basic need-to-knows of today's sentencing appeal: Ricardo Perez-Delgado ("Perez") received a forty-year prison sentence, even though the applicable guideline sentencing range ("GSR") only went up to a ceiling of thirty years and five months of imprisonment. For his part, relying upon the Sentencing-Law-101 fundamental that a court must adequately explain the reasons for its chosen sentence, he argues the district court didn't adequately lay out its rationale for imposing a sentence nine years and seven months (essentially a decade) over the top of the GSR. For the government's part, it claims there's nothing to see here: The district court's explanation was perfectly fine and it more than adequately justified the upwardly variant sentence. For our part, after taking the time to mull it all over, we conclude that Perez's arguments carry the day. We, unsurprisingly then, vacate and remand for resentencing.

## THE BACKDROP

Before getting to the merits of today's sentencing appeal, we start off with a summary of the facts and of how the case got to us. And since we're here on a sentencing appeal following a guilty plea, we lift the facts from the undisputed portions of the probation office's presentence investigation report ("PSR"), the plea agreement, and the transcript of the

sentencing hearing.  See United States v. Vaquerano Canas, 81 F.4th 86, 89 (1st Cir. 2023).

*The Crime*

In the late-night hours of March 31, 2019 and continuing through the early-morning hours of April 1, Perez, along with Angel David López-Zayas ("López") and Freddie Ramos-Ortiz ("Ramos"), planned to rob a businessman ("the victim"), who owned gas stations and commercial properties in Puerto Rico.  After scoping the victim's home, they left to acquire some supplies and to speak with Jadiel Joaquin Torres-Rijos ("Torres"), who decided to join their plan to rob the victim.  The four of them returned to the victim's home, pepper sprayed his dogs, and broke the fence to his home.  They entered the home through the kitchen window, but the noise woke the victim from his slumber.  To avoid being caught, the four robbers exited the home and waited outside.  The victim then exited the home too, to see what all the ruckus was about.

Outside the home, López rushed towards the victim swinging a baseball bat, but missed the victim because it was dark. In an effort to defend himself, the victim then retrieved a gun from his car and shot at the robbers.  Avoiding the gunfire, López, Ramos, and Torres ran into the home.  Still outside himself, the victim stumbled upon Perez and a struggle between them ensued, during which the victim bit Perez on the face.  Later on, López heard screaming and ran back outside to find the victim being held

with his arms behind his back and being beaten with a baseball bat and the butt of a rifle.[1]  All four robbers ultimately took part in the beating.  Perez then shot the victim six times with the victim's own gun and killed him.[2]

---

[1] The PSR does not specify which co-defendant or co-defendants were holding the victim down and beating the victim when López ran outside.

[2] In the parties' briefing to us, there was a bit of a squabble between them because the fact that Perez was the shooter is not included anywhere in the PSR's Offense Conduct section as a fact found by the probation office during their investigation or as a fact stipulated to by the parties.  Rather, this fact appears in the PSR's Victim Impact section, which describes the probation office's interview of the victim's children, who indicated in that interview that Perez was the shooter.  On appeal, Perez seemed to have been challenging the evidentiary basis for this fact (one cited by the district court when delivering its sentence) as no evidence was presented at sentencing to corroborate his role as the shooter, explaining that the victim's children's statement was the only piece of evidence and it was merely "a belief" that included no "suggestion of the basis for that belief."  At oral argument, though, defense counsel made it clear as day that Perez is not challenging that fact and Perez was, indeed, the shooter.  We, therefore, take Perez and defense counsel at their word and include that tidbit of information here.  While we do not wish to spill more ink on a tangent that everyone agrees on (i.e., Perez's role as the shooter), we must quickly emphasize before moving on that "[f]actual findings made at sentencing must be supported by a preponderance of the evidence" and "findings based solely on unreliable evidence cannot be established by a preponderance."  United States v. Castillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021).  As we've done before, "[w]e . . . warn[] district courts not to base sentencing determinations upon mere charges unsupported by any admission or some other evidence, even when the defendant offers no rebuttal evidence."  Id. (citation and internal quotation marks omitted); see also id. at 72-73 (vacating sentence because relevant factual finding was not supported by preponderance of the evidence, where in the PSR the probation office merely "pass[ed] along allegations made by someone else . . . without vouching for them").

- 4 -

With the victim dead, the robbery could now proceed as originally planned. To sum it up, the four robbers stole two safes, multiple firearms, two cars, and over $20,000 in cash. Later on, they divvied up the loot amongst themselves and went on their own way.

*The Sentencing Proceedings*

As might be expected, Perez was eventually found, arrested, and indicted for these actions. And on August 18, 2021, he agreed to plead guilty pursuant to a plea agreement to the use and carry of a firearm during and in relation to a crime of violence resulting in death. Also pursuant to that plea agreement, the government agreed to dismiss other counts against Perez arising from his conduct and agreed to a three-level reduction for acceptance of responsibility, resulting in a total offense level ("TOL") of forty. The parties also agreed to jointly recommend a sentence of imprisonment of 300 months.[3]

In anticipation of sentencing, the probation office filed its PSR with the district court. The PSR calculated a TOL of forty (which the parties also agreed to) and a Criminal History Category ("CHC") of I (as Perez had no criminal priors). These

---

[3] We take a beat here to note that the plea agreement also included a waiver-of-appeal provision, but as that provision was conditioned upon the district court sentencing Perez to 300 months or less (which emphatically did not occur here), it serves as no bar to today's appeal. See United States v. Ruiz-Huertas, 792 F.3d 223, 226 n.2 (1st Cir. 2015).

calculations yielded a GSR of 292-365 months' imprisonment.[4] Before closing out, the PSR indicated that the probation officer who prepared the report did not eye any factors that would warrant a sentence outside the GSR.

The sentencing hearing took place on March 4, 2022. Business started as usual with the district court first noting that it had read Perez's sentencing memorandum, which discussed his background and upbringing. Both parties then voiced their joint recommendation of 300 months' imprisonment. Thereafter, the victim's son and Perez addressed the district court.

At the end of these preliminaries, attention turned back to the district court to give its sentencing colloquy, which went a little like this: First, the district court ran the numbers itself (i.e., the TOL, CHC, and GSR) and ultimately adopted the probation office's GSR calculation -- namely, 292-365 months' imprisonment.[5] Second, the district court stated that it, in deciding Perez's sentence, had considered the relevant statutory factors outlined in 18 U.S.C. § 3553(a), the PSR, Perez's sentencing memorandum, counsels' arguments, and the victim's son's

---

[4] Although the PSR indicates that the GSR's minimum term of imprisonment was 290 months, not 292 months, that appears upon inspection to be just a typo and this two-month difference is not ultimately relevant to the issues on appeal today.

[5] Just as the probation office did, the district court mistakenly indicated that the GSR's minimum term of imprisonment was 290 months, not 292 months.

and Perez's in-court statements. Third, the district court briefly recounted Perez's age, educational background, employment and health status, and marijuana use. Fourth, the district court summarized the nature and circumstances of the offense. This factual summary was largely consistent with the facts found in the Offense Conduct section of the PSR, with two notable exceptions. The district court added in that "[o]ver 50 percent of [the victim's] bones were broken" and "[the victim] was then released and shot with his own firearm approximately six times by Mr. Perez." Fifth, and finally, the district court meted out a variant sentence of 480 months' imprisonment (i.e., forty years total, and 115 months above the GSR's 365-month top). The district court's explanation for its variant sentence amounted to one sentence:

> The Court finds that the sentence recommended by the parties does not reflect the seriousness of Mr. Perez'[s] offense, does not promote respect for the law, does not protect the public from additional crimes by Mr. Perez, and does not address the issues of deterrence and punishment. Accordingly, it is the judgment of the Court that [Perez] is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 480 months.

And that was it. The district court did not otherwise address its basis for the upward variance or even acknowledge that its chosen sentence had strayed from the GSR at all.

Once the district court was done speaking, defense counsel offered the following objection:

> Your Honor, as to appeal purposes, we need to object to the sentence that has been handed down today for being substantive[ly] and procedurally unreasonable, and the term of imprisonment specifically being over what -- the Plea Agreement and the recommended guidelines in the PSR.

To this objection, the district court said not a word.

Following the end of the sentencing hearing, the district court filed a statement of reasons ("SOR"), in which it checked off the following three boxes as reasons for its variant sentence: Perez's "[r]ole in the [o]ffense"; the need "[t]o reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and the need "[t]o afford adequate deterrence to criminal conduct."

Unhappy with his variant sentence, Perez then asked us to weigh in through a timely notice of appeal.

**THE MERITS**

Against this factual and procedural backdrop, we turn our attention to Perez's sentencing appeal, which follows our now-familiar "two-step framework" for sentencing appeals. United States v. Colón-Cordero, 91 F.4th 41, 48 (1st Cir. 2024).

Step one involves determining whether the sentence was procedurally reasonable. See United States v. Melendez-Hiraldo, 82 F.4th 48, 53 (1st Cir. 2023). Examples of errors that might require us to label a sentence procedurally unreasonable include the district court "failing to calculate (or improperly

- 8 -

calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007).

Assuming all is procedurally a-okay, we then proceed to step two, which involves determining whether the sentence was substantively reasonable. See Melendez-Hiraldo, 82 F.4th at 53. We stamp a sentence as substantively reasonable "if its rationale is plausible and resulted in a defensible outcome." United States v. De La Cruz, 91 F.4th 550, 553 (1st Cir. 2024).

With our two-step framework in place, we lay out Perez's arguments on appeal. Essentially, he has three arrows in his quiver: First, he argues that his sentence was procedurally and substantively unreasonable because the district court did not adequately explain the reasons for its upwardly variant sentence. Second, he argues that his sentence was procedurally and substantively unreasonable because the district court created a sentencing disparity with his co-defendants and did not adequately explain the basis for that disparity.[6] And third, he argues that

---

[6] López was sentenced to 240 months, Ramos was sentenced to 282 months, and Torres was sentenced to 360 months. All of these sentences were ten or more years less than Perez's sentence of 480 months and no co-defendant received an upwardly variant sentence.

his sentence was procedurally unreasonable because the district court did not put him on notice that his role in the offense was going to be an issue at sentencing.

Of those three arrows, Perez's first inadequate-variance-explanation argument clearly hits the bull's-eye for reasons we'll explain in due course. Our discussion, therefore, will be limited to this winning argument. See, e.g., Colón-Cordero, 91 F.4th at 48 ("[W]e need train our focus on only some of those claims, not all, to reach our outcome."); United States v. Torres-Meléndez, 28 F.4th 339, 340 (1st Cir. 2022) (focusing discussion of sentencing appeal on only one procedural-reasonableness argument, as "the simplest way to handle a case is often the best way" (citation and internal quotation marks omitted)). And even though Perez makes his inadequate-variance-explanation argument on both procedural and substantive unreasonableness terms,[7] our discussion of this particular argument will be limited to procedural reasonableness because, as we mentioned above, we don't reach step two of our framework unless all the procedural i's are dotted and t's are crossed. See United States v. Reyes-Santiago, 804 F.3d 453, 467-68 (1st Cir. 2015).

---

[7] We've explained before that "[t]he lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence." United States v. Crespo-Ríos, 787 F.3d 34, 37 n.3 (1st Cir. 2015).

But before getting into the weeds of why Perez's argument is a winner, we pause first to address our standard of review and second to walk through some of the A, B, C's of sentencing that guide our coming analysis.

*Standard of Review*

At either step in the two-step framework, we review preserved claims of error for abuse of discretion and, "[w]ithin the abuse-of-discretion rubric, we review the sentencing court's findings of fact for clear error and questions of law (including the court's interpretation and application of the sentencing guidelines) de novo." United States v. Carrasquillo-Vilches, 33 F.4th 36, 41 (1st Cir. 2022) (citation and internal quotation marks omitted). If the defendant failed to preserve their claim of error, however, they are left saddled with plain-error review. See United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016).

Here, the government requests that we review Perez's inadequate-variance-explanation argument for plain error, because he supposedly failed to preserve this error before the district court. That's a request we cannot grant for the following reasons. It is true (as the government points out) that in general "[t]o preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error." United States v. Soto-Soto, 855 F.3d 445,

448 n.1 (1st Cir. 2017). But "our preservation policy" is not ironclad either; it simply requires "putting the district court on notice of the error." Colón-Cordero, 91 F.4th at 50. To that end, we have emphasized that, "[t]o preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with exquisite precision." United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020).

Applying our preservation policy here, we deem defense counsel's objection sufficiently specific to call the district court's attention to its failure to adequately explain the variance from the GSR. To recap, once the district court finished its sentencing colloquy, defense counsel objected "to the sentence that has been handed down today for being . . . procedurally unreasonable, and the term of imprisonment specifically being over . . . the recommended guidelines in the PSR." Accordingly, defense counsel specified that he was objecting to the sentence on procedural-reasonableness grounds and then "supplied more specific reasons for objecting -- among them" that the sentence was above the applicable GSR. United States v. García-Pérez, 9 F.4th 48, 53 (1st Cir. 2021). We find that "[s]ubsumed within th[at] objection[] is the clearly implicit charge that the district court's explanation" did not sufficiently explain why Perez's sentence was above the GSR. United States v. Serrano-Berríos, 38 F.4th 246, 250 n.1 (1st Cir. 2022).

To be sure, we concede that defense counsel could have offered some greater specificity in his objection. But "exquisite precision" has never been required, Rivera-Berríos, 968 F.3d at 134, and we have explained before that "[t]he lack of an adequate explanation can be characterized as . . . procedural error," Crespo-Ríos, 787 F.3d at 37 n.3. Furthermore, we think the broader context of this particular sentencing hearing makes it "contextually clear" that defense counsel's objection and specific reference to the sentence being above the GSR put the district court sufficiently on notice that defense counsel believed its explanation to be wanting. Colón-Cordero, 91 F.4th at 49. The broader context here involves (1) an extraordinary variance (just shy of a decade); (2) a sentencing hearing at which both the government and defense counsel advocated for a within-the-GSR sentence; (3) a PSR in which the probation office indicated it thought there was no reason to vary; (4) a sentencing memorandum from defense counsel explaining that the within-the-GSR joint recommendation more than satisfied all the goals of sentencing; (5) three other co-defendants who did not receive upwardly variant sentences; and (6) a sentencing colloquy during which (as we will explain in just a minute) the district court did not explain why

it opted for such a significantly outside-the-GSR sentence. To require more in this context would be to gild the lily.[8]

On this record, therefore, we keep our abuse-of-discretion review and file plain-error review away for another day. With that, we move on to the aforementioned A, B, C's of sentencing necessary to understand our analysis and ultimate decision.

*A, B, C's of Adequate Sentencing Explanations*

A sentencing court is obligated to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). This obligation serves multiple purposes: it not only gives the defendant (and the public) an understanding of why the defendant is receiving a particular sentence, but it also "allow[s] for meaningful appellate review" and "promote[s] the perception of fair sentencing." Gall, 552 U.S. at 50.

Nevertheless, explaining the reasons for a particular sentence is more of an art than a science. On the one hand, the explanation must highlight "the primary factors driving the imposed sentence," but on the other hand, it need not be "precise to the point of pedantry." Rivera-Berríos, 968 F.3d at 134 (citations omitted). Basically, context is the name of the game here, because "[t]he appropriateness of brevity or length,

_____

[8] We by no means suggest that only in these specific contextual circumstances would such an objection be considered preserved.

- 14 -

conciseness or detail, when to write, what to say, depends on the circumstances." Rita v. United States, 551 U.S. 338, 356 (2007); see also Colón-Cordero, 91 F.4th at 50-51 ("Just what kind of explanation is needed depends on the context of each individual case."). For example, a sentence that sits comfortably within the GSR "requires a less elaborate explanation." United States v. Murphy-Cordero, 715 F.3d 398, 402 (1st Cir. 2013).

Conversely (and relevantly for our purposes here today), an outside-the-GSR sentence (whether above or below) requires more. See id. Just how much more depends on the degree of the variance. The more the sentencing court decides to vary, the more it needs to explain. See United States v. Reyes-Correa, 81 F.4th 1, 10 (1st Cir. 2023). And while "we have not mandated that a sentencing court follow any particular format in explaining an upwardly variant sentence," United States v. Flores-Nater, 62 F.4th 652, 656 (1st Cir. 2023), part of its explanation must include why the defendant's case "differ[s] from the norm" or "the mine-run of" cases covered by the applicable GSR. Serrano-Berríos, 38 F.4th at 250 (citations and internal quotation marks omitted). Whatever explanation the sentencing court decides to give must also be case-specific. Boilerplate or generic explanations that are one-size-fits-all-defendants (particularly in the context of variant sentences) will not do. See, e.g., Colón-Cordero, 91 F.4th at 52-53; Reyes-Correa, 81 F.4th at 10-11; United States v.

- 15 -

Carrasquillo-Sánchez, 9 F.4th 56, 62 (1st Cir. 2021); Rivera-Berríos, 968 F.3d at 137.

All that said, "a sentencing court's rationale need not always be explicit even when the court imposes an upwardly variant sentence." Flores-Nater, 62 F.4th at 656. In such instances, "if the explanation can be gleaned 'by fair inference' from the sentencing record," we'll deem that sufficient. Id. (quoting United States v. Ortiz-Pérez, 30 F.4th 107, 114 (1st Cir. 2022)). Nevertheless, our willingness to infer a sentencing rationale has its limits. See Carrasquillo-Sánchez, 9 F.4th at 62 ("[W]hile 'a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did,' such inferences must be anchored in 'what the judge did.'" (quoting United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc))).

With those sentencing-explanation basics squared away, all that's left is our take on today's sentencing appeal.

*Our Take*

Perez argues the district court's explanation was too threadbare to make the cut on appeal. More specifically, he explains that the district court offered only a generic, one-sentence explanation for a sentence that varied upwardly by nearly a decade. Besides that one sentence, the district court offered only a factual summary of the crime, which doesn't amount

- 16 -

to a sentencing explanation (according to Perez). Seemingly ignoring the generic, one-sentence explanation, the government counters that the district court's explanation can be inferred by its references to Perez's privileged history and upbringing, the brutal nature of the crime, and his role as the shooter. In our view, Perez has the better of the arguments.

To kick things off, we agree that the district court's explanation was limited to one generic sentence: "The Court finds that the sentence recommended by the parties does not reflect the seriousness of Mr. Perez'[s] offense, does not promote respect for the law, does not protect the public from additional crimes by Mr. Perez, and does not address the issues of deterrence and punishment." Nothing in this one sentence is specific to Perez's case, highlights which aspects of the crime were particularly troubling to the district court, or explains why an extra ten years in prison is the magic number. Rather, this explanation is boilerplate. And we use the term "boilerplate" literally because the explanation the district court gave here tracks almost word-for-word the same explanations we have deemed inadequate in many other cases. See, e.g., Colón-Cordero, 91 F.4th at 52-53; Reyes-Correa, 81 F.4th at 10-11; Flores-Nater, 62 F.4th at 656-57; Serrano-Berríos, 38 F.4th at 249-50; United States v. Muñoz-Fontanez, 61 F.4th 212, 214-15 (1st Cir. 2023). As we've indicated before and repeat today, this explanation "simply

rehearses -- but does not apply -- certain of the factors that Congress has instructed courts to consider in imposing sentences." Reyes-Correa, 81 F.4th at 11 (quoting Flores-Nater, 62 F.4th at 656, which in turn is citing 18 U.S.C. § 3553(a)(2)).

Of course, this doesn't end our analysis because, as we mentioned above, an adequate sentencing explanation can, at times, be fairly inferred "from the sentencing colloquy and the parties' arguments (oral or written) in connection with sentencing." Montero-Montero, 817 F.3d at 37. And the government beseeches us to look at the district court's sentencing colloquy because, in the government's view, all the answers as to why the district court gave Perez an extra decade in prison are right there. So, let's take another look at that sentencing colloquy to see if we find the answers the government assures us are there (they aren't).

To refresh the memory, after adopting the probation office's GSR tabulations, the district court acknowledged that it had considered the § 3553(a) factors, the PSR, Perez's sentencing memorandum, counsels' arguments, and the victim's son's and Perez's in-court statements. Then, the district court laid out some basic biographical details about Perez: twenty-six years old, associate's degree, pre-arrest employment in maintenance, prior marijuana use, and physical and mental health intact. Next, the district court ran through the facts of the crime. Once finished with its factual recap, the district court gave the

- 18 -

aforementioned, one-sentence explanation and meted out its forty-year sentence. Having reviewed the sentencing colloquy, we find nothing that comes close to an adequate explanation for a sentence with a variance of this magnitude (nearly a decade over the top-line of the GSR).

The government responds by urging us to review the colloquy more carefully and read in-between the lines. First, it argues that the district court referred to "Perez's privileged history and characteristics" in the colloquy, which suggests that "his decision to participate in the senseless brutality was especially troubling" to the district court. But the sum total of the district court's reference to Perez's background was the following: "Mr. Perez is 26 years old, has an Associate[']s Degree in education, was employed in maintenance prior to his arrest for his offense, and has a history of using marijuana. He is physically healthy, and mentally stable." To state the obvious, this is not an explanation for a variant sentence; it doesn't even acknowledge that there is a variance and, unlike the government's spin on what it believes animated the district court's thinking, the district court itself doesn't even use the word "privileged."

No matter, says the government, because it has other winning arguments on deck. It contends next that, in the detailed factual summary the district court gave at sentencing, the district court included that (1) this was "a violent crime during which the

victim was brutally murdered" and "[o]ver 50 percent of [the victim's] bones were broken," and that (2) "[the victim] was . . . shot with his own firearm approximately six times by Mr. Perez." By including these facts in its summary, the government believes that the brutal nature of the crime and Perez's role as the shooter were the driving forces behind the district court's upwardly variant sentence. Put simply, color us unconvinced.

As an initial matter, we take issue with an underlying assumption of this argument. A simple recitation of the facts underlying the crime -- with no emphasis on any particular fact -- is not a justification for a sentence with an extraordinary variance. See Reyes-Correa, 81 F.4th at 11-12 ("A summary of the events that preceded the [sentencing] hearing -- without more -- is an impermissible basis for a large upward variance."); Muñoz-Fontanez, 61 F.4th at 214-15 ("But the court's mere listing of the facts of the arrest, without emphasis on any particular circumstance, makes it impossible to tell whether it was the automatic weapon or something else that motivated its decision."). Rather, "[w]hen imposing a significant variance, a sentencing court must make clear which specific facts of the case motivated its decision and why those facts led to its decision." Muñoz-Fontanez, 61 F.4th at 215.

Even if we declined to view these statements as a factual recap and instead, take the government's arguments head on, they

are still wanting.  While the district court did indeed describe the crime as "violent" and "brutal[]," and noted that the victim was left with fifty percent of his bones broken, a passing reference to the brutal nature of the crime is hardly an individualized explanation specific to Perez, especially where the beating was inflicted equally by four co-defendants.[9]  Moreover, the district court did not place particular "emphasis" on this aspect of the crime, thus making it "impossible to tell" if this was the driving force behind the sentence.  Id. at 214.

The district court's references to Perez's role as the shooter and the fact that he shot the victim six times fare no better.  Although the district court mentioned these facts, it gave no indication that it was these facts that justified the district court's imposition of a variant sentence -- which, given the magnitude of the variance, it was required to do.  See id. at 215.  And to the extent the facts that the victim died and that a firearm was used during the commission of the crime were at the forefront of the district court's mind when imposing its sentence, the GSR clearly already took into account both those facts; the crime to which Perez pleaded guilty, after all, was the "use and carry of a firearm during, and in relation to crimes of violence resulting in death," (emphases ours).  And "[i]t is settled beyond

_____

[9] As we earlier noted, each co-defendant received a lesser sentence and from the same sentencing court.

hope of contradiction that when a sentencing court relies on a factor already accounted for by the sentencing guidelines to impose a variant sentence, [it] must indicate what makes that factor worthy of extra weight." Rivera-Berríos, 968 F.3d at 136 (second alteration in original) (citation and internal quotation marks omitted). Here, the district court provided no such indication. The government retorts that "[w]hile the victim's death was considered in the advisory guideline calculus because the murder cross reference was applied, . . . the senselessness of shooting the victim six times after the torture was not." Fair enough, but the government's retort is citation-free to any aspect of the record where the district court explains that it upwardly varied because of this "senselessness." So, we are again left to resort to guesswork as to why the district court imposed its upwardly variant sentence. All told, we find nothing in the sentencing colloquy from which we can infer the district court's reasoning.

Having concluded then that there's nothing in the district court's sentencing colloquy from which we can infer an explanation, we ask: is there anything else in the record that could clear this up? Perez answers "no" and the government answers "yes," pointing us to the SOR. The government argues that the district court checked off the "[r]ole in the [o]ffense" box in its SOR, "illustrat[ing] that P[e]rez's role as the shooter was important to the [district] court." But this argument fails for

the reasons just discussed.  The district court gave no explicit indication during its colloquy that Perez's role as the shooter was anchoring its upward variance.  And the facts that the victim died and that a firearm was used were accounted for by the GSR, and the district court never explained why these aspects of the crime should be given greater weight here.  Accordingly, there's nothing in the sentencing record as a whole from which we can infer an adequate explanation.[10]

In sum, what we have here is a one-sentence, generic explanation, a factual summary of the crime, and a sentencing record from which we cannot infer an adequate rationale.  That's plainly insufficient to justify a nearly ten-year upward variance because recall that the greater the variance, the greater the explanation must be.  See Reyes-Correa, 81 F.4th at 10.  Here, Perez was sentenced to an additional nine years and seven months

_____

[10] In a last-ditch effort, the government makes a passing argument that the district court's sentence was reasonable and its explanation was sufficient because, while the GSR only went up to a maximum 365 months' imprisonment, the criminal statute at issue here allowed the district court to sentence Perez to life imprisonment if it so chose.  The logic of this argument appears to be that, since the district court could have sentenced Perez to life, forty years has got to be reasonable.  It is true that we have, at times, relied in part on the statutory possibility of life imprisonment to deem an upwardly variant sentence reasonable. See, e.g., United States v. Díaz-Bermúdez, 778 F.3d 309, 313-14 (1st Cir. 2015).  But we have never even so much as suggested that a crime punishable by a statutory maximum of life imprisonment would make an upwardly variant sentence irreversible on appeal.  A sentencing court must always explain its sentences, regardless of any statutory maximum on the books.

in prison.  Any way you slice it, that is an extraordinary variance.  See, e.g., Colón-Cordero, 91 F.4th at 53 (noting an upwardly variant sentence by nine months represents a "significant time period by any reasonable measure"); Reyes-Correa, 81 F.4th at 13 (describing upward variance by twenty-seven months as "massive"); United States v. Vélez-Andino, 12 F.4th 105, 116 (1st Cir. 2021) (characterizing an upward variance by fourteen months as "substantial").  So, we decline to bend over backwards trying to piece together an explanation, "[g]iven that the strength of the justification must increase proportionally with the length of an upwardly variant sentence."  Reyes-Correa, 81 F.4th at 13.  Therefore, the district court's explanation (or more accurately, lack thereof) was an abuse of discretion.[11]

**THE WRAP-UP**

Convinced that the district court didn't adequately explain its sentence, we vacate Perez's sentence and remand to the district court for resentencing consistent with this opinion.  The district court should base its sentence on the existing factual record, supplemented by any facts that occurred after the prior date of sentencing, to the extent those facts are offered and

---

[11] We highlight, before we part, that nothing we have said should be taken to mean that an upwardly variant sentence is inappropriate here.  That is a matter purely in the district court's discretion.  But should the district court on remand decide to upwardly vary again, the explanation must be individualized and proportional to the length of the variance.

admissible.  And as we stated above, we do not reach any of Perez's other appellate arguments against his sentence.  To the extent any of the issues raised in either party's briefing remain relevant on remand, they are free to pursue them before the district court.