# United States Court of Appeals
## For the First Circuit

No. 23-1963

UNITED STATES OF AMERICA,

Appellant,

v.

CARLOS VÁZQUEZ-NARVAEZ,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. District Judge]

Before

Gelpí, Lipez, and Rikelman, Circuit Judges.

Gregory B. Conner, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellant.

Peter J. Porrata for appellee.

April 9, 2025

**LIPEZ**, **Circuit Judge**.  Defendant Carlos Vázquez-Narvaez ("Vázquez") pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  For that offense, the probation office calculated a guideline sentencing range of fifty-one to sixty-three months of imprisonment and five years to life of supervised release.  Although the district court agreed that the guideline range had been correctly calculated, it sentenced Vázquez to time served -- twenty-one days -- and seven years of supervised release.  The government now appeals, arguing that this sentence is substantively unreasonable because it lacks a plausible sentencing rationale.  Concluding that the district court did not adequately explain its basis for granting such an extraordinary downward variance, we vacate and remand for resentencing.

## I.

Because this sentencing appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report . . ., and the record of the disposition hearing." United States v. Candelario, 105 F.4th 20, 21 (1st Cir. 2024) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

During an investigation of the digital filesharing network BitTorrent, agents of the Federal Bureau of Investigation's ("FBI's") San Juan field office discovered an

account containing files of child pornography.[1]  The FBI identified the Internet Protocol address associated with the account, which it determined was registered to Vázquez.  Based on that information, the FBI obtained a warrant to search Vázquez's residence.  While executing the warrant, the FBI seized various electronic devices, including a tablet that contained child pornography.

Vázquez subsequently agreed to be interviewed by agents and, in that interview, admitted to using his cell phone and tablet to possess and view child pornography.  The child pornography he possessed, Vázquez further admitted, involved minors aged fourteen to fifteen and sometimes as young as ten.  He disclosed that he had been watching child pornography for more than five years, eventually viewing it daily for thirty to ninety minutes at a time. He denied, however, having interacted with minors online or in person.  Vázquez admitted to possessing between 300 and 600 images of child pornography.  It was later determined that he possessed more than 600 such images.

Vázquez was charged in a two-count indictment with possession of child exploitation material in violation of 18 U.S.C.

---

[1] BitTorrent is a peer-to-peer network whereby users create file-sharing folders that are accessible to other BitTorrent users.  During their investigation, FBI agents downloaded from Vázquez's file-sharing folder twenty-seven files of child pornography that Vázquez had made available.

§ 2252A(a)(5)(B) and transportation of child exploitation material in violation of 18 U.S.C. § 2252A(a)(1). He was arrested and detained for five days before his bail hearing, at which point he was granted release on conditions that included posting a $100,000 unsecured bond. After his bail hearing, Vázquez remained in jail for another sixteen days before posting bond, resulting in a total confinement period of twenty-one days.

Shortly thereafter, the parties entered into a plea agreement, in which Vázquez agreed to plead guilty to count one, possession of child pornography, and the government agreed to dismiss count two, transportation of child pornography, which carried a mandatory minimum sentence of five years. The parties also agreed to recommend jointly a term of forty-eight months' imprisonment for the possession count.[2] The district court accepted Vázquez's guilty plea at his change-of-plea hearing.

The probation office then submitted to the district court a presentence investigation report ("PSR"), which calculated a guideline sentencing range for the possession count of fifty-one to sixty-three months of imprisonment and five years to life of

_____

[2] The recommendation of forty-eight months' imprisonment was premised on a calculated guideline sentencing range of forty-six to fifty-seven months. The parties calculated this range using a base offense level of eighteen, plus eight levels because of the specific offense characteristics, and minus three levels because of Vázquez's acceptance of responsibility for a total offense level of twenty-three.

- 4 -

supervised release.[3]   The PSR also suggested that an above-guideline sentence might be warranted because some of the child pornography videos in Vázquez's possession were substantially more than five minutes in duration.[4]  Moreover, the report included impact statements from two victims depicted in the child pornography that Vázquez possessed. Both victims detailed the significant trauma they endured because of their exploitation, including being subject to continued harassment, stalking, and threats.

At the sentencing hearing, the parties requested that the district court consider the plea agreement and the joint recommendation that Vázquez be sentenced to forty-eight months of imprisonment.  During his allocution, Vázquez stated that he was ashamed of what he had done and apologized to his family and community as well as to the victims of the materials he "looked

---

[3] The probation office used the same guideline calculation as the parties but included an additional one-level enhancement based on Vázquez's possession of more than 600 images of child pornography for a total offense level of twenty-four.  The parties' calculation was premised in part on their belief that the offense involved between 300 and 600 such images.  Moreover, based on his lack of prior convictions, the probation office determined that Vázquez's criminal history category was I.

[4] The probation office attached to the PSR statistical information taken from the United States Sentencing Commission's Judiciary Sentencing Information database, which showed that of the 116 defendants in the previous five years with the same guideline, offense level, and criminal history category as Vázquez, ninety-five percent received a sentence of imprisonment, with a mean length of incarceration of thirty-seven months.

at."  He said that he hoped to receive a sentence that would allow him "to rebuild [his] life with the appropriate help," which he had "already started receiving, thanks to the authorities," and would "continue receiving during [his] sentence."

The district court agreed that the probation office had correctly calculated the guideline range of fifty-one to sixty-three months and stated further that it had considered Vázquez's background, the elements of his offense, the plea agreement, and the sentencing recommendation of the parties. Nevertheless, it determined that "the sentence in the plea agreement is greater than necessary to fulfill the purposes of the sentencing" factors of 18 U.S.C. § 3553(a) and thus found "that a downward variance is appropriate in this case."

By way of explanation, the district court noted that Vázquez had been "cooperative with law enforcement and the [g]overnment by promptly agreeing to plead guilty" and had "complied with the most restrictive bail conditions." Additionally, the court emphasized that Vázquez had "commenced his process of rehabilitation by" participating in "specialized treatment for sex offenders."  It then added that it "understands that this progress may be tarnished with an interruption in treatment to serve an imprisonment term."  The court also explained that "[t]he sentence to be imposed" would allow Vázquez "to begin making restitution payments upon gaining employment."  Finally,

the district court stated that it was "giving credit to the fact that" Vázquez "had no direct contact with the victims" and did not engage in "production of child pornography, nor enticement."

After announcing its decision to sentence Vázquez to time served plus seven years of supervised release, the district court made the following comment:

> Mr. [Vázquez], I have thought a lot about your sentence. And it is one of my first sentences as a district judge. I was a magistrate judge for almost 19 years, but as a magistrate judge, I did not sentence defendants in felonies. I have dealt with many child pornography cases as a magistrate judge, and this is my first child pornography case as a district judge. I do not want to undermine the seriousness of this offense, which is very serious. However, I have to credit the fact that it seems -- and I think you have done everything right [from the time] the investigation started until today to warrant the sentence I just imposed.

The government objected to the imposition of a noncustodial sentence. It explained that the other offenses to which the district court had compared Vázquez's offense -- producing child pornography and enticement -- carried statutory minimum sentences of fifteen and ten years, respectively, and it noted that the charge it dismissed as part of the plea agreement carried a statutory minimum sentence of five years of imprisonment. Thus, the government argued that the sentence imposed "is lower than should be encompassed for these type[s] of cases that involve

the possession of child exploitation material."  This appeal followed.

## II.

The government argues on appeal that the district court's sentence of time served "was substantively unreasonable" because "it was premised on a lacking and implausible rationale." While we would typically consider a district court's "fail[ure] to adequately explain the chosen sentence -- including an explanation for any deviations from the Guidelines range" -- to be a "procedural error," Gall v. United States, 552 U.S. 38, 51 (2007), we have recognized that the district court's sentencing rationale "is also relevant to the substantive reasonableness inquiry," United States v. Crespo-Rios, 787 F.3d 34, 37 n.3 (1st Cir. 2015); see also United States v. Flores-Nater, 62 F.4th 652, 655 (1st Cir. 2023) (describing "the hallmarks of a substantively reasonable sentence" as "a plausible sentencing rationale and a defensible result" (quoting United States v. Díaz-Lugo, 963 F.3d 145, 157 (1st Cir. 2020))).  The government does not argue that the sentence imposed was indefensible, only that its rationale was implausible. We thus offer no opinion on the length of the sentence imposed -- apart from the justification for it.

## A. The Explanation for the Sentence: The Relevant Law

A sentencing court is required to "state in open court the reasons for its imposition of the particular sentence."  18

- 8 -

U.S.C. § 3553(c). That requirement "serves multiple purposes: it not only gives the defendant (and the public) an understanding of why the defendant is receiving a particular sentence, but it also 'allow[s] for meaningful appellate review' and 'promote[s] the perception of fair sentencing.'" United States v. Perez-Delgado, 99 F.4th 13, 21 (1st Cir. 2024) (alterations in original) (quoting Gall, 552 U.S. at 50). While the sentencing court need not "offer an explanation of its sentencing decision that is 'precise to the point of pedantry,' the explanation must elucidate the primary factors driving the imposed sentence." United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) (quoting United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016)).

Whether a court has adequately stated its reasons for imposing a particular sentence is largely context dependent. As the Supreme Court has explained, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." Rita v. United States, 551 U.S. 338, 356 (2007); see also United States v. Colón-Cordero, 91 F.4th 41, 50-51 (1st Cir. 2024) ("Just what kind of explanation is needed depends on the context of each individual case." (citing Rita, 551 U.S. at 356)).

As relevant here, when the sentencing court imposes a sentence outside the guideline sentencing range -- whether above or below -- it must sufficiently justify that variance. See

- 9 -

Perez-Delgado, 99 F.4th at 21. To do so, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50. "The justification presented should be commensurate with the degree of the variance such that 'a major [variance] should be supported by a more significant justification than a minor one.'" Crespo-Rios, 787 F.3d at 38 (quoting Gall, 552 U.S. at 50); see also Flores-Nater, 62 F.4th at 655 ("As the variance increases, so too does the district court's burden to offer a sound justification for the sentence imposed.").

While "we have not mandated that a sentencing court follow any particular format in explaining" a "variant sentence," Flores-Nater, 62 F.4th at 656, the court must include an elucidation of "why the defendant's case 'differ[s] from the norm' or 'the mine-run of' cases covered by the applicable" guideline, Perez-Delgado, 99 F.4th at 21 (alteration in original) (quoting United States v. Serrano-Berríos, 38 F.4th 246, 250 (1st Cir. 2022)). That said, the sentencing court's obligation may be satisfied by an "explanation [that] can be gleaned 'by fair inference' from the sentencing record." Flores-Nater, 62 F.4th at 656 (quoting United States v. Ortiz-Pérez, 30 F.4th 107, 114 (1st Cir. 2022)). "Nevertheless, our willingness to infer a sentencing rationale has its limits." Perez-Delgado, 99 F.4th at 22.

## B. Applying the Law

By any measure, the downward variance in this case -- from fifty-one months (the low end of the guideline range) to twenty-one days (time served) -- was extraordinary. See, e.g., Colón-Cordero, 91 F.4th at 46, 53 (describing a nine-month variance on a guideline sentence of forty-six to fifty-seven months' imprisonment as "significant . . . by any reasonable measure"). Accordingly, it was incumbent upon the district court to provide a sentencing rationale that was correspondingly thorough and cogent. See Gall, 552 U.S. at 50.

In arguing that the district court's explanation did not meet these requirements, the government relies heavily on our decision in Crespo-Rios, which it describes as "a largely analogous case." In Crespo-Rios, the defendant engaged in sexually explicit online communications over several months with an FBI agent posing as a twelve-year-old girl. 787 F.3d at 35. The communications included the defendant transmitting to the "minor" images of his genitals, repeatedly encouraging "the 'minor' to engage in sexual activities with him or for him," and asking "the 'minor' to meet him, or to transmit images of herself" to him. Id. Based on those messages, the FBI obtained a warrant to search the defendant's home and computer, and during the execution of that warrant, agents found the defendant in possession of "between 300 and 600 images of child pornography." Id. The defendant pleaded guilty to

knowingly attempting to transfer obscene material to a minor and to knowingly possessing child pornography, for which the probation office calculated a guideline sentencing range of seventy to eighty-seven months of incarceration and five years to life of supervised release.  Id. at 35-36.  Ultimately, as here, the district court sentenced the defendant to time served -- thirteen days -- and fifteen years of supervised release.  Id. at 36.

On appeal, we noted that, in articulating its sentencing rationale, "[t]he [district] court's exclusive focus was on the personal history and characteristics of the defendant," and specifically "the defendant's potential for rehabilitation and low risk of recidivism."  Id. at 37-38.  Problematically, while the court "mentioned that the 'offense' was 'very serious,' it did not explain how it had factored that [seriousness] into its § 3553(a) analysis.  And the court offered no explanation about its ultimate view on the need for general deterrence or the potential for sentencing disparities."  Id. at 37.  Reasoning that the district court's explanation was therefore "incomplete, and hence inadequate, to justify the extent of the variance imposed," we vacated and remanded for resentencing.  Id. at 38-39.

The similarities between Crespo-Rios and the case before us are striking.[5]  In this case, when explaining its decision to

---

[5] In arguing in favor of the sentence imposed, Vázquez does not meaningfully contend that Crespo-Rios is inapt or otherwise

- 12 -

vary significantly from the calculated guideline range, the district court focused almost exclusively on Vázquez's efforts at cooperation and rehabilitation following his arrest. Certainly, the district court was entitled to consider those efforts, which are relevant to Vázquez's character. See 18 U.S.C. § 3553(a). However, as in Crespo-Rios, given the degree of the variance, the district court could not rely solely on those efforts to justify the sentence imposed. See 787 F.3d at 38. Instead, the court was required to "explain how it had weighed the other factors laid out in § 3553(a)" and articulate "why this particular sentence was appropriate in light of" those other factors. Id.

Nevertheless, the district court did not explain how the sentence imposed "reflects the seriousness of the crime[] committed, avoids sentencing disparities, promotes general deterrence, or promotes respect for the law." Id. As we explained in Crespo-Rios, "[t]hese factors cannot be left out of the sentencing calculus in cases like this," where the district court varies so substantially, even if the court has found little to no

inapplicable. Nonetheless, we recognize that the facts of Crespo-Rios are distinguishable from and more egregious than the facts here, given that Vázquez did not have contact with minors. As noted, the defendant in Crespo-Rios engaged in sexually explicit online communications over several months with an FBI agent who the defendant believed to be a twelve-year-old girl. 787 F.3d at 35. That difference is not dispositive, however, given the clear parallels between the two cases both with respect to the crimes charged and the district courts' sentencing explanations.

risk that the defendant before it will reoffend. Id. Reforming the individual offender is not the only goal of sentencing. Rather, "punishment is also meant to deter others, affirming the seriousness of the crime and the penalties that others will likely face and the difficulty of avoiding punishment." United States v. Milo, 506 F.3d 71, 76 (1st Cir. 2007); see also United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007) ("The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced."). The district court, with its focus solely on Vázquez's post-arrest conduct, did not explain how its sentence was compatible with these other important sentencing goals.

To be sure, the district court stated that it "d[id] not want to undermine the seriousness of the offense, which is very serious." But that brief comment said nothing about the "harm inherent in the possession of child pornography" or caused specifically by Vázquez's conduct. Crespo-Rios, 787 F.3d at 40; see also Rivera-Berríos, 968 F.3d at 137 (holding that the district court's "generic" reference to, among other things, "the seriousness of the offense" could not "serve as [a] building block[] for" a variance).

Our court and other circuits have emphasized the substantial harm caused by the possession of child pornography.

See, e.g., Crespo-Rios, 787 F.3d at 40; United States v. Robinson, 778 F.3d 515, 520 (6th Cir. 2015) ("Children are exploited, molested, and raped for the prurient pleasure of . . . [those] who support suppliers of child pornography." (omission and alteration in original) (quoting United States v. Goff, 501 F.3d 250, 259 (3d Cir. 2007))); Goff, 501 F.3d at 259 (noting that individuals who "possess child pornography directly contribute to [children's] continuing victimization"). The devastating impact of this offense on children cannot be overstated. In this case, the PSR contained accounts from two child victims of the lasting harm to them caused by the child pornography that Vázquez possessed -- harm that the district court did not mention. Indeed, "the district court provided no explanation as to how any of this weighed in its sentencing decision." Crespo-Rios, 787 F.3d at 40.

The notion that the district court accounted for the seriousness of Vázquez's offense is also called into question by the court's statement that it was "giving credit to" Vázquez for not committing other serious crimes. True, Vázquez did not have direct contact with the victims, and he did not produce the child pornography himself. But the fact that he could have committed additional, arguably more serious offenses in no way diminishes the seriousness of the offense he did commit. See United States v. Ramey, 721 F. App'x 135, 138 (3d Cir. 2018) ("[T]he possession of child pornography alone, even absent any physical contact

between the offender and a minor, is an extremely serious crime that causes substantial harm.").

Moreover, the district court's comments on the factors it expressly considered -- Vázquez's cooperation and potential for rehabilitation -- do not justify the substantial variance. Specifically, in articulating its consideration of those factors, the district court pointed to nothing that would meaningfully differentiate Vázquez from other first-time child-pornography offenders. See Serrano-Berríos, 38 F.4th at 250 (explaining that "the district court needed to 'articulate[] why it believed [the defendant's] case differed from the norm'" (first alteration in original) (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014))).

For example, the district court explained that a time-served sentence would allow Vázquez to "begin making restitution payments upon gaining employment." As the government points out, however, it is always true that a noncustodial sentence would permit an offender to begin paying restitution more quickly than a sentence of incarceration. This consideration therefore does not place Vázquez's case outside the "mine-run" of child-pornography-possession cases. Rivera-Berríos, 968 F.3d at 137.

In addition, the district court credited Vázquez for cooperating fully after his arrest by quickly pleading guilty and

complying with his bail conditions, telling him: "I think you have done everything right [from the time] the investigation started until today to warrant the sentence I just imposed." Although Vázquez's post-arrest conduct was laudable, defendants are expected to comply with the conditions of their release -- that is, such conduct is not outside the norm. And the court's reliance on Vázquez's post-arrest contrition seems to overlook that Vázquez received a three-point reduction for accepting responsibility, which included a one-point reduction for "timely notifying authorities of [his] intention to enter a plea of guilty." Because Vázquez's post-arrest conduct was "already accounted for by the sentencing guidelines," the district court was required to "indicate what makes that factor worthy of extra weight." Id. at 136 (quoting Díaz-Lugo, 963 F.3d at 155). The court, however, did not explain how Vázquez's acceptance of responsibility was so exceptional when compared to "the ordinary situation covered by the guidelines calculation" as to justify the extent of credit given. United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006) (determining that the sentencing court's rationale for varying upward based on the defendant's previous deportations was "unpersuasive to support the magnitude of the increase" where the guideline sentencing range incorporated "a two-level increase applicable to a defendant . . . who has been deported . . . on one or more occasions" (quoting U.S.S.G. § 2L2.2(b)(1))).

- 17 -

The district court also stressed that the sentence imposed would permit Vázquez to continue undergoing specialized treatment for sex offenders, apparently believing that Vázquez's "progress" in sex-offender treatment "may be tarnished with an interruption in treatment to serve an imprisonment term." There is nothing in the record, however, to suggest that Vázquez would be unable to continue his treatment in prison. See United States v. Demma, 948 F.3d 722, 730 (6th Cir. 2020) (noting that "the prison system itself provides sex-offender treatment"). To the contrary, Vázquez stated at sentencing that he believed he would "continue receiving" treatment "during [his] sentence." Again, the district court's sentencing explanation does not reveal why, in this respect, it viewed Vázquez's case to differ from the norm. See Serrano-Berríos, 38 F.4th at 250.

Although we have at times "filled in the gaps in a district court's reasoning by looking to the arguments made by the parties or laid out in the PSR," Crespo-Rios, 787 F.3d at 39, we cannot do so here. Because the parties jointly endorsed the forty-eight-month sentence of incarceration outlined in the plea agreement, neither the government nor Vázquez submitted sentencing memoranda or presented arguments on the factors about which the district court was silent. What is more, the PSR submitted here suggested that, based on the facts of Vázquez's case, an upward -- not a downward -- departure might be warranted. We thus have

no basis for inferring that the district court appropriately considered the § 3553(a) factors when granting the extraordinary variance in this case.

## C. Conclusion

We do not suggest with the above analysis that the district court was careless in imposing its sentence. The judge noted that she was drawing on her years of experience as a magistrate judge, during which she had handled many child pornography cases, and she made clear that she had "thought a lot about [Vázquez's] sentence." These sentencing decisions are difficult, particularly in the first instance. We are mindful of that reality. And we offer no opinion on whether the sentence imposed, if supported by a more plausible and comprehensive explanation, would be reasonable. The government has not asked us to do so. We simply hold that the explanation provided was insufficient to justify the extreme downward variance.

Accordingly, we <u>vacate</u> the sentence and <u>remand</u> for resentencing consistent with the principles set forth herein.

<u>So ordered.</u>